Gallinger vs. Lake Shore Traffic Co.

GALLINGER, Respondent, vs. LAKE SHORE TRAFFIC COMPANY, Appellant.

*November 30 — December 14, 1886.*

CONTRACTS: AGENCY: APPEAL TO S. C.: PRACTICE. *(1, 2) Authority of agent: Evidence: Liability of principal. (3) Estoppel: Accounts rendered. (4–6) Reversal of judgment: Evidence: Immaterial errors. (7) Examination of impeaching witness. (8) Summing up: Latitude allowed to counsel.*

1. Though an agent exceeded his authority in making a certain contract, yet if he had previously made contracts of a similar character which had been approved by the principal, the latter will be bound by the contract in question if he permits it to be performed by the other party without notice that the agent exceeded his authority in making it.

2. To show the authority of an agent to make a certain contract, evidence that he had previously made other similar contracts which had been recognized and approved by the principal, is admissible although the other party to the contract in question had no knowledge of such previous contracts.

3. Plaintiff contracted to cut and haul certain logs for the defendant. For the purpose of obtaining pay under the contract he made monthly statements of the amount of logs delivered, charging therefor $3.50 per M. less a reserve of twenty-five per cent. *Held*, that such statements did not estop the plaintiff to show that by the contract he was to receive $4.50 per M. for a portion of the logs, the extra dollar to be paid afterwards when the reserve was paid.

4. The admission of evidence cannot be alleged as error when the question to which such evidence relates was not submitted to the jury.

5. A judgment will not be reversed for the admission of immaterial evidence not prejudicial to the appellant.

6. Evidence in this case, showing that the manager of the defendant corporation was also an officer of the railroad running by its place of business, is *held*, if immaterial, not to have prejudiced the defendant.

7. A ruling that in examining an impeaching witness the same questions must be put that were put to the witness sought to be impeached, is *held*, if erroneous, to be immaterial where the impeaching witness did in fact testify fully as to all the conflicting statements claimed to have been made.

VOL. 67 — 34

8. Though attorneys should not be permitted to assume and comment to the jury upon facts not in proof, yet they should be allowed considerable latitude of remark in speaking of matters in evidence, of the character and conduct of witnesses, and of the manner in which the case has been conducted.

APPEAL from the Circuit Court for *Marathon* County.

Action to recover a balance alleged to be due upon a logging contract. The principal facts are stated in the opinion. The ninth assignment of error, therein referred to, was based upon the following ruling of the trial court: James Blackburn, the superintendent of the defendant company, who made the contract on its behalf with the plaintiff, had testified on behalf of the plaintiff and had been cross-examined as to certain statements which he had made to officers of the defendant relating to the matters in controversy. One of such officers was being examined on behalf of the defendant as to such statements, and was directed by defendant's counsel to " Go on and state what the conversation was with Mr. Blackburn." Plaintiff's counsel objected on the ground that the same questions must be put to the witness as had been put to Mr. Blackburn. The court sustained the objection.

The jury returned a special verdict to the effect (1) that it was agreed between the superintendent Blackburn and the plaintiff that the latter should have $4.50 per thousand for logging at the west camp; (2) that Blackburn was authorized by the defendant to make such agreement with the plaintiff;. (3) that it was a part of such agreement that a voucher was to be given for the additional dollar per thousand, payable June 1, 1884; (4) that the plaintiff was acquainted with the defendant's practice of paying claims upon vouchers approved by the general manager, stating the nature of the claim; (5) that the practice of the defendant was to pay claims for logging upon monthly vouchers specifying the price per thousand, after approval

by the general manager; (6) that such practice was known to and understood by the plaintiff prior to November, 1883; (7) that statements or vouchers for each month's logging under the contract in question were made by the superintendent and approved by the general manager, stating the price of logging at $3.50 per thousand, and including the logging at the west camp; (8) that the plaintiff signed each of such vouchers and received payments thereon from the treasurer of the company; (9) that prior to making such payments upon the monthly vouchers the general manager of the defendant was informed that the plaintiff claimed $4.50 per thousand for logging at the west camp.

Motions by the defendant to set aside the verdict and for judgment thereon in its favor were denied, and judgment was entered for the plaintiff. The defendant appeals.

*Alfred L. Cary*, for the appellant, to the point that if Blackburn contracted for one price with the plaintiff and reported a lower price to his superior officer with plaintiff's knowledge and approval (which the vouchers show conclusively was done), and the superior officer acted upon such report by approving and paying the vouchers, then plaintiff is estopped to claim any other contract price than that named in the vouchers, cited *Davis v. Bush*, 28 Mich. 432; *Gingrass v. Iron Cliffs Co.* 48 id. 413; *Donohue v. Woodbury*, 6 Cush. 148; *Davenport v. Wheeler*, 7 Cow. 231; *Stagg v. Conn. Mut. Ins. Co.* 10 Wall. 589; *Frost v. S. M. Ins. Co.* 5 Denio, 154; *Hills v. Laming*, 24 Eng. L. & Eq. 452.

For the respondent there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber*. They argued, *inter alia*, that the mere fact that a person is connected with a railway company will not be held as a matter of law to prejudice him with a jury. In showing that Reed was connected with the railway company plaintiff had two objects in view. As manager of the railway company it

was his duty to pass Norrie constantly, his means of knowing what took place at the camps, what was the condition of affairs at that place, what were the entries on Blackburn's books, were far greater than if he was shut up in his office in Milwaukee. The testimony might be material in that it showed opportunities on the part of Reed to ascertain just the agreement made by Blackburn and the plaintiff. Under no circumstances could the testimony work prejudice.

Taylor, J. This action is brought by the plaintiff to recover from the defendant company a balance which he claims is due to him upon a logging contract which he claims to have made with the company. There is no dispute but that the plaintiff cut and hauled to the defendant's mill several million feet of logs in the winter of 1883–4; nor is there any dispute that he cut and hauled such logs for the defendant under a special agreement as to the price he should be paid therefor. The only dispute is as to the price which the defendant agreed to pay. On the part of the defendant it is insisted that the price agreed upon for all the logs put in by the plaintiff during that logging season was $3.50 per thousand feet, and it is admitted that the plaintiff had been paid at that rate for all the logs put in. On the part of the plaintiff it is claimed that the price for putting in the logs which were put in from the west side of the lake spoken of in the case, and on which lake the defendant's mill was situated, was to be $4.50 per thousand feet, instead of $3.50 per thousand feet, as claimed by the defendant. The action is brought to recover the extra dollar per thousand feet for the logs put in from the west side of the lake. There is no dispute, either, as to the quantity of logs put in from said west side of the lake. The whole controversy in the case is upon the question of the price which the defendant agreed to pay for putting in

the logs. The plaintiff claims that the price agreed upon for the west-side logs was $4.50 per M., and the evidence on his part given upon the trial, if believed by the jury, clearly justified the verdict of the jury in his favor for the amount claimed by him.

The evidence shows that the contract made for putting in the logs in question was made on behalf of the defendant by one James Blackburn, who was shown to be the superintendent of the defendant, at its saw-mill, when the logs were delivered. So far as the questions of fact in this case are concerned, it is evident that the merits of the plaintiff's demand rest mainly upon the question of the authority of Blackburn to bind the defendant company by his contract with the plaintiff. The plaintiff testifies that the contract for putting in the logs was made with Blackburn, acting for the company; and Blackburn testifies that he made the contract on behalf of the company, and agreed to give him the $4.50 per M., as claimed by the plaintiff.

Upon the question of the general authority of Blackburn to make contracts for the company, and on its behalf, in relation to cutting and hauling logs to the mill, there is sufficient evidence in the case to justify the court or jury in finding that he had authority to bind the company in regard to such contracts. Blackburn testifies, as to his authority, as follows: "I was superintendent for the company at Norrie [the place where the defendant's mill was situated] for about three years and a half, from the fall of 1880 to July, 1884." In answer to the question, "Go on and state in detail what you did for them, and what it was a part of your duty to do," he testified: "I had to arrange for logging contracts, for sales of lumber, engage men and discharge them, to pay them for the time they worked, and other duties of that kind." In answer to the following question, viz.: "So far as making the contracts, fixing the prices, etc., in whose charge was that?" he answered: "In mine

exclusively." "It was left to me." "The details of these contracts were in my charge." Again, he testified that the general manager of the company, Mr. Reed, invariably left to him the making of these contracts for getting in logs for the company, and he mentions a large number of contracts for getting in logs made by him for the company,— some in writing and some verbal contracts,— in which he fixed the price to be paid by the company, all of which contracts had been performed by the company as he made them, without objection.

The authority of Blackburn to make these contracts on behalf of the company is only denied so far as the fixing of the prices to be paid was concerned. Mr. Reed, the general manager, testified that the price was always fixed by him before Blackburn had any authority to bind the company; but he does not deny that the other details of the contracts were left to Mr. Blackburn, or that the contracts as finally made were made by Blackburn on behalf of the company; nor does he claim that he personally fixed the prices with the parties with whom Blackburn made the contracts, except in one or two instances. He simply limited Blackburn as to the prices he should give in making the contracts; nor does he claim that he had any conversation with the plaintiff in this action as to the price he was to receive for putting in the logs for which he claims the extra compensation, previous to the time he claims to have made his contract with Blackburn.

In this state of evidence it is very clear that the question as to the authority of Blackburn to bind the company by his contract made in behalf of the company with the plaintiff, was a question of fact for the jury and not of law for the court; and upon the testimony in the case there seems to be a clear preponderance in favor of his authority. If it were admitted that the proof shows that, as to this contract, Blackburn had exceeded his authority as between

himself and the company, yet, in the absence of any evidence showing that the plaintiff had any knowledge of such restriction upon his authority in this particular case, and in view of the fact that Blackburn had theretofore made all the contracts of a similar character on behalf of the company and that such contracts had been appoved by the company, we are of the opinion that the company would be bound by the contract made by Blackburn if the company permitted it to be performed by the plaintiff without notice that Blackburn had exceeded his authority in making it. The following authorities cited by the learned counsel for the respondent fully sustain this view of the case: *C. & N. W. R. Co. v. James*, 24 Wis. 383; *Hall v. C., M. & St. P. R. Co.* 48 Wis. 317; *Gano v. C. & N. W. R. Co.* 49 Wis. 57; *S. C.* 60 Wis. 12; *Bentley v. Doggett*, 51 Wis. 231; *Bouck v. Enos*, 61 Wis. 664; *State ex rel. Drake v. Doyle*, 40 Wis. 200; *Kasson v. Noltner*, 43 Wis. 650; *Savage v. Davis*, 18 Wis. 608.

The jury having found by their verdict that Blackburn had authority to make the contract with the plaintiff, and that he did make the same as claimed by the plaintiff, those findings are conclusive upon this court. This is not a case where there is only a *scintilla* of evidence to sustain the verdict. Upon a careful reading of the evidence we think the verdict can hardly be said to be against the weight of the evidence. The evidence on the part of the plaintiff, if believed by the jury, was ample to sustain the verdict; and it is the peculiar province of the jury to pass upon the credibility of the testimony of the several witnesses. The jury having settled the material questions of fact in the case in favor of the plaintiff, the judgment must stand unless there are material errors in the admission or rejection of evidence or in the instructions of the court to the jury.

The first error assigned by the learned counsel for the

appellant is that the court refused to order the plaintiff nonsuited at the close of his evidence. That point has been virtually decided against the appellant by what has already been said in this opinion.

But it was urged by the learned counsel for the appellant, on the argument, that the plaintiff was estopped in equity and in law from demanding more than $3.50 per M. for getting out the logs in question, because he reported monthly to the company the number of logs cut and hauled for the month, and, in making such monthly statements, for the purpose of obtaining pay under the contract and getting at the amount due him for the month's work, he submitted to the company a statement in the following form:

" *Lake Shore Traffic Co. to A. Gallinger, of Oshkosh, Dr.:*

| | | | | | |
|---|---|---|---|---|---|
| 1884, January 2. For 853,652 ft. logs delivered in lake in | | | | | |
| December, $3.50, | - | - | - | - | $2,987 78 |
| Less 25 per cent. reserve, | - | - | - | - | 746 94 |
| | | | | | $2,240 84 |

" Correct: R. BLACKBURN, Clerk.

" Vouched for: JAMES BLACKBURN, Supt.

" Approved: H. G. H. REED, Gen. Manager.

" Received, 15th January, 1884, the sum of $2,240.84, in full for the above bill.        A. GALLINGER."

The evidence showed that half or more of the logs mentioned in the above voucher were from the west side of the lake. In the absence of sufficient proofs in the case to establish the fact of a binding contract for a specific price between the parties different from the price mentioned in this and the other monthly reports rendered, such reports would undoubtedly be conclusive as to the compensation to be paid. But, had there been a written contract between the parties which was admitted to have been made with full authority fixing the price as claimed by the plaintiff, it would hardly be contended that the rendering of these

monthly accounts for the purpose of obtaining partial payments would have changed such written contract or have estopped the plaintiff from claiming the greater price fixed by such contract.  In that case there could be no pretense that the company had been misled to its injury by rendering the monthly accounts in that way.  The jury in this case having found that notwithstanding such accounts were rendered there was a binding contract made between the plaintiff and the company for a larger compensation than that mentioned in the monthly accounts rendered, the accounts so rendered can have no greater force as an estoppel upon the plaintiff than they would have had had the contract been in writing and admittedly binding upon the company.  The evidence was competent as tending to show that the contract was not as claimed by the plaintiff, but it does not estop him from showing what the contract really was.

Under the evidence and findings of the jury, the company must be supposed to have known, when these monthly accounts or vouchers were made, that the money then claimed was not to be in full payment for the work done.  In fact, under the contract established by the plaintiff by his proofs on the trial, there is nothing which is at all inconsistent in his claim to the extra dollar per M. for the logs taken from the west side of the lake, and the monthly accounts stated by him.  They were made in strict accordance with the contract established by him on the trial.  Both the plaintiff and Blackburn testified that the extra dollar was not to be paid until the reserve became payable in June, and that the monthly payments were to be made on the basis of $3.50 per M., just as they were in fact made.  We think these monthly vouchers do not estop the plaintiff from claiming the extra dollar per M. under the contract established by him on the trial, and the nonsuit was properly denied.  None of the cases cited by the learned counsel for

the appellant in support of his claim that the plaintiff is estopped by rendering the monthly accounts from now claiming the contract price, are, as to their essential facts, like the case at bar.

The objections to evidence offered by the plaintiff, mentioned in the second, third, and fourth assignments of error, were, we think, properly overruled. The evidence offered tended to show the authority of Blackburn to make contracts for cutting and hauling logs for the defendant. The evidence was offered to show that Blackburn had made other contracts of a like nature to the one made with the plaintiff, which had been recognized and approved by the defendant company. Such evidence is clearly competent on the question of the authority of the agent. The case is not like the case of *Butts v. Newton*, 29 Wis. 632. In that case there was no pretense in the evidence that Butts had authorized his wife to act as his agent at any time before she did the acts complained of by him, and the court simply held that the ratification of one or more of these unauthorized acts was not evidence tending to show her authority to do the others, or tending to ratify them. In the case at bar the evidence was of acts done by the agent for the company before the contract was made with the plaintiff, and was competent evidence tending to show that he had authority to bind the company by future acts of a like character.

The fifth error assigned is the objection to certain exhibits offered by the plaintiff, tending to show that he had made a settlement with Blackburn, as agent of the company, showing a balance due him on such settlement. The question as to whether there had been a settlement which should bind the defendant was not submitted to the jury, so that the defendant could not have been prejudiced by this offer of evidence.

The sixth assignment of error was an objection to the following question put to the plaintiff: "How many logs did

you put in, during the four seasons, for the traffic company?" It may be that the question was not material to the issue, but we are unable to see how it could have prejudiced the defendant under the findings of the jury in the case.

The seventh assignment of error is an exception to the evidence given by Blackburn as a witness for the plaintiff, showing that he had made a large number of contracts for getting in logs for the defendant before the alleged contract was made with the plaintiff. We think this evidence was clearly competent, whether the plaintiff had any knowledge that Blackburn had in fact made such contracts or not. The evidence tended to show the extent of his authority as agent of the defendant. One issue in the case was whether Blackburn had power to make the contract as agent of the company. The agency was denied by the company. Any evidence which fairly tended to show that he was agent for the company with power to make the contract, was clearly competent. Would it have been any objection to the evidence, if, on the trial, the plaintiff had offered a written power of attorney from the company to Blackburn specifically conferring on him authority to make this and all other contracts of a like nature on its behalf, that the plaintiff did not know of the existence of the power of attorney when he entered into the contract with Blackburn as agent for the company? That the want of such knowledge on the part of the plaintiff would be no objection to the evidence is too clear for argument. The same rule must apply to all evidence which tends to prove the authority of the agent.

The eighth error assigned was that the court permitted the following question to be answered: "Was Mr. Reed connected with the Lake Shore Railroad that runs by Norrie?" Admitting that the evidence was immaterial, we do not think it was such error to admit it as should reverse the judgment. It is urged with some force by coun-

sel for the respondent that the evidence was material as tending to show that the general manager of the defendant company, having other duties to perform which would necessarily take up most of his time, could not attend to the details of the business of the defendant, and it would be necessarily delegated to Blackburn. Other considerations are stated in the respondent's brief in favor of the admissibility of this evidence. Whether material or not, we think it could not have prejudiced the case of the defendant.

The ninth assignment of error relates to a question of practice as to the examination of a witness called to impeach the testimony of another witness by showing that such other witness had made different and contradictory statements out of court from those testified to by him in court. Whether the rule stated by the circuit judge was the true rule or not, the defendant did not suffer from it, as the witness was examined fully in regard to the matter, and all the conflicting statements claimed to have been made by him were fully testified to by the impeaching witness.

The exception to the remarks of the attorney of the plaintiff to the jury we think was properly overruled by the court. Courts must necessarily allow considerable latitude of remark on the part of the attorneys for the parties in speaking of matters which are evidence in the cases, and upon the character and conduct of the witnesses produced by the opposite party, and of the manner in which the case has been conducted by the opposite party. While the attorney should not be allowed to assume facts as in the case, in the absence of proof of such facts, and comment to the jury upon such assumed facts, he ought not to be trammeled in his comments upon the evidence and facts appearing in the case, or upon the character and conduct of the witnesses produced against his client. It does not appear from the record

that the counsel was permitted to comment on any matter which had not transpired on the trial of the action.

The eleventh assignment of error alleges that the court misdirected the jury. We think the, parts of the instructions to which exceptions were taken not erroneous. They relate to the kind of testimony which the jury should consider in determining whether Blackburn had authority to make the contract he claims to have made with the plaintiff, and the learned judge has simply repeated the rule which governed him on the trial in the admission of evidence on the part of the plaintiff, and which we have stated above was the proper rule in a case of this kind.

The twelfth and thirteenth assignments of error, that the court refused to set aside the verdict, and that judgment should have been rendered for the defendant on the special verdict, have been disposed of in deciding the other assignments of error against the appellant.

The case appears to have been very thoroughly tried by both parties at the circuit, and, there being no material errors committed on the trial of the action, the verdict of the jury upon the conflicting evidence must stand.

· *By the Court.*— The judgment of the circuit court is affirmed.

See note as to estoppel in 30 N. W. Rep. 790.— REP.

