Fidelity and Casualty Company of New York, Appellant, v. Continental Illinois National Bank and Trust Company of Chicago, Appellee.

Gen. No. 40,895.

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed February 14, 1940. Rehearing denied March 12, 1940.

RATHJE, HINCKLEY, BARNARD & KULP, of Chicago, for appellant; JOSEPH J. SULLIVAN, JR., of Chicago, of counsel.

CHAPMAN & CUTLER and MAYER, MEYER, AUSTRIAN & PLATT, all of Chicago, for appellee; RALPH F. HUCK, of Chicago, of counsel.

Mr. Justice Burke delivered the opinion of the court.

During the years 1929 and 1930 Hannah H. Blackwell (hereinafter referred to as Hannah) became the owner of 240 shares of the common stock of Pittsburgh Screw and Bolt Corporation and 2 shares of preferred and 9 shares of common stock of City Ice and Fuel Company. Since June 28, 1932, a joint checking account was maintained by Hannah Blackwell and C. W. Blackwell, her husband, in the Harris Trust and Savings Bank, Chicago, on which both had power to draw, and on which both from time to time did draw. Both Hannah and her husband agreed that funds deposited to the credit of that account could be drawn out by either. Prior to August, 1933, Hannah also opened a savings account at the same bank. The record does not show when the savings account was opened. On April 5, 1933, subsequent to the date of the opening of the savings account, she executed a power of attorney, which reads: "Mr. C. W. Blackwell, whose signature appears above is hereby authorized to check and draw money on my savings account No. 3434 with you, using and signing my name for the purpose in such style and manner as may be acceptable to you, also in my name to endorse checks and drafts for collection or for credit on my account or to obtain cash therefor and generally to transact business with you for me and in my name the same as I could do myself if I were personally present and acting therein; and I hereby ratify all he may do in the premises by virtue of this authority.

"This authority to remain good until revoked by me in writing." Above the quoted language appears the authorized signature of "Hannah H. Blackwell by C. W. Blackwell." During the months of August and October, 1933, C. W. Blackwell, herein referred to as Blackwell, having secured possession of all the stock certificates, delivered the Pittsburgh Screw and Bolt Corporation's certificates, bearing forged indorsements

of her name, to Shields & Company for sale. Shields & Company guaranteed the indorsements, sold the certificates for $1,857.60, and delivered its checks for the sales price to Blackwell. The checks were payable to Hannah as the owner of the certificates, and were drawn on the defendant, Continental Illinois National Bank and Trust Company of Chicago, as drawee. After receiving the checks from Shields & Company, Blackwell immediately deposited them (bearing the forged indorsements of Hannah's signature as payee, and his genuine indorsements), not in her savings account, but in the joint checking account in the Harris Trust and Savings Bank. The checks were presented by the Harris Bank to the defendant drawee, which honored them and charged the amounts thereof to the account of Shields & Company. During the month of July, 1934, Blackwell delivered Hannah's City Ice and Fuel Company's certificates, bearing forged indorsements of her name, to Shields & Company for sale. The latter guaranteed the indorsements and forwarded the certificates to Kneeland & Company, which likewise guaranteed the indorsements, sold the certificates and delivered checks aggregating $337.62 to Blackwell for the sales price. These checks were likewise payable to Hannah as the owner of the certificates, and were also drawn on the defendant. Blackwell thereupon deposited the checks bearing the forged indorsements of Hannah, as payee, and his genuine indorsements, in the same checking account at the Harris Bank, and shortly thereafter withdrew the proceeds. The checks were presented by the Harris Bank to the defendant bank, the drawee, which honored the same and charged the amounts thereof to the account of Kneeland & Company, the drawer. Shortly after the conversion and sale of the certificates, they were delivered to the Pittsburgh Screw and Bolt Corporation and the City Ice and Fuel Company respectively, for cancellation and transfer. Prior to the issuance of the checks by the

brokers, the plaintiff herein had agreed to indemnify the brokers and to save them harmless from any loss occasioned by forgeries of drafts, checks or securities and indorsements thereon, which indemnity agreements were in force at the time of the transactions. During 1933 and 1934, in which period the transactions complained of took place, Blackwell was unemployed. He had lost his position, but had not informed his spouse until some time in September or November, 1934, after all the transactions here involved had taken place. Hannah, during that period, was under the impression that he still had his job. During that period she and her husband continued to live as they had before, doing the things they had been accustomed to do, including spending substantial amounts of money at Flossmoor Country Club, living in an apartment for which the rent was over $100 a month, and maintaining a car. Blackwell deserted Hannah in the early Fall of 1934. It was not until after his desertion that she discovered the stock certificates had been stolen and sold by means of forged indorsements of her signature. She filed complaints in chancery in the circuit court of Cook county against the corporations which had issued the stock certificates, and therein prayed for a decree directing them to replace the certificates by the issuance and delivery to her of new certificates in lieu thereof, or in the alternative, for judgments equal to the market value of the stock. She also asked for an accounting and for judgments for the amount of dividends attributable to the shares of stock since the respective dates of transfer. The issuers requested the brokers to indemnify them against the asserted damage. As a result of the litigation the brokers procured shares of stock on the market which were turned over to Hannah, in lieu of the stock which bore the forged indorsements. Thereupon plaintiff indemnified the brokers in accordance with their contracts and procured assignments of their causes of action. It also ap-

pears that subsequent to filing her complaint for relief against the issuers of the stock, Hannah filed a complaint for and was granted a decree dissolving the bonds of matrimony between them. On June 18, 1938, plaintiff as the assignee of the drawers of the checks, filed its complaint in the circuit court of Cook county and asked for judgment in an amount equal to the aggregate of the checks issued by the brokers, with interest thereon from the respective dates of issuance. The defendant answered, and the case was tried before the court without a jury. Written stipulations were read. Hannah also testified briefly. The court found the issues against plaintiff and entered a judgment for costs, to reverse which this appeal is prosecuted.

The first point urged by plaintiff is that a drawee bank has an unqualified duty to the drawer to honor only such checks as bear the indorsement of the payee, the genuineness of which it must ascertain at its peril, and has no authority to charge the drawer's account with the amount of checks honored by it bearing the forged indorsements of the payee. Its second point is that in a suit by the drawer of a check against the drawee bank, proof that the indorsement on the check is not in the handwriting of the payee is sufficient, prima facie, to establish the fact that the indorsement is a forgery and to justify a judgment based upon the fact of such forgery, and upon such proof being made the drawee has the burden of sustaining its contention that the indorsement was authorized by the payee. Defendant does not challenge the correctness of these propositions. Finally, plaintiff insists that powers of attorney and general expressions and language contained in powers of attorney, however broad they may appear to be, are, as a matter of law, strictly construed as limited to acts of the kind indicated by the appointment so as to effectuate the principal's purpose and intention in creating the agency, and should not be construed so as to enlarge the powers specifically

given. Defendant admits that the latter is a correct statement of the rule as to the construction of powers of attorney. Defendant argues, however, that this rule of construction in the instant case has application only to the last phrase, which reads: "and generally to transact business with you for me and in my name the same as I could do myself if I were personally present and acting therein." Defendant admits that this phrase merely gives power to Blackwell to do all the things necessary to carry out the specific and express powers given, and that the general authority in that phrase serves merely to amplify and emphasize that what was done was proper and binding upon Hannah, and within the express powers given. Defendant, however, maintains that Blackwell's act of indorsing the checks and depositing them in the joint checking account, was within the actual authority expressly conferred on him by the power of attorney, and that hence the question of the liability of the defendant, as the drawee bank, for payment of checks upon a forged or unauthorized indorsement is not here involved. There is a dispute between the parties as to whether the record does show that C. W. Blackwell physically placed the indorsements of "Hannah H. Blackwell" on the checks in question. In its answer defendant alleged that the indorsement of the name of the payee was made by Blackwell. This was "new matter" pleaded by the defendant. In its reply plaintiff does not deny that the indorsements were made by Blackwell, but states that the checks were deposited in the joint checking account, and that the account was really Blackwell's account, and that Hannah did not know that the proceeds were in that account until long after. The record shows that at the time of the trial, counsel for defendant informed the court that Blackwell indorsed his wife's name on the stock certificates. It was also admitted that Blackwell, after receiving the checks from the brokers, deposited them in the joint

checking account at the Harris Bank. Plaintiff calls attention to paragraph 53 of the stipulation, which reads:

"53. Nothing herein contained shall be construed as an admission or stipulation by or on behalf of the Defendant or said Harris Bank that the endorsement 'Hannah H. Blackwell' appearing on said checks of Shields & Company and said checks of Kneeland & Co., Inc., was a forgery, or an admission or stipulation by said persons that the said endorsement was placed thereon without the authority of said Hannah H. Blackwell. Likewise nothing in this stipulation contained shall be construed as an admission or stipulation by the Plaintiff or by said Hannah H. Blackwell that the endorsement 'Hannah H. Blackwell' appearing on said checks of Shields & Company and said checks of Kneeland & Co., Inc., is the actual signature of said Hannah H. Blackwell or that said endorsement was placed thereon by or with the approval, direction or authority of said Hannah H. Blackwell." We agree with the defendant that the purpose of the stipulation was to make sure that plaintiff was not foreclosed from asserting that the power of attorney was not sufficient to authorize Blackwell to indorse and deposit. Nothing is mentioned therein as to whether Blackwell did or did not indorse his wife's name. We find that the record clearly warranted the court in finding that Blackwell indorsed his wife's name on the certificates and on the checks.

Plaintiff argues that it is apparent from a perusal of the power of attorney that it was given to the Harris Bank by Hannah for the sole purpose of enabling Blackwell, should the occasion arise, to transact, for her, business pertaining only to her savings account, that the document did not authorize defendant or the Harris Bank to honor drafts which might be presented to either bank bearing her simulated forged indorsement, but only permitted Blackwell "to check and

draw money on my savings account No. 3434 with you, using my name for the purpose in such style and manner as may be acceptable to you, also in my name to endorse checks and drafts for collection or for credit on my account or to obtain cash therefor.'' Plaintiff also asserts that if the deposits had been accepted by the Harris Bank in reliance on the power of attorney, the indorsement of Hannah's name would have been made by Blackwell and would have appeared in the form of indorsement, which Blackwell was authorized to make, and would not have appeared as the simulated indorsement of Hannah, followed by the genuine indorsement of Blackwell. We have held that the record before us warranted the trial court in finding that the indorsements of Hannah on the stock certificates and checks were made by Blackwell. We are satisfied that where the agent is given power to indorse checks and collect money payable to the principal, he has the right to indorse the checks either in the name of the principal with her simulated indorsement, or in her name by himself as her attorney. In the instant case the agent had the express power to indorse checks for credit or collection, or to obtain cash therefor. Defendant maintains that the power of attorney authorized Blackwell to draw money from his wife's savings account. There is no dispute as to that proposition. Defendant also states that Blackwell was given power to indorse checks and drafts for collection, that he was given the additional power to indorse checks and drafts for credit ''on my account,'' and that finally he was granted the specific power to indorse checks and drafts in order ''to obtain cash therefor.'' The last-mentioned power is the one upon which defendant places chief reliance. Defendant argues that since Blackwell had the power to indorse checks payable to Hannah, and upon such indorsement obtain the cash therefor, he also had the power to do the lesser thing of crediting the amount of the checks to the joint checking account, and urges that

if instead of cashing the checks or depositing them to the credit of the joint account, he had deposited them in the savings account itself, there could be no question but that the power of attorney permitted him to do that. Had he deposited the checks to the credit of the savings account, it argues that he could, under the express powers given him, have immediately withdrawn the funds from the savings account and used them as he saw fit, or put them in the joint checking account and disposed of them just as he actually did. We have carefully analyzed the language of the power of attorney and find that it specifically authorized Blackwell to indorse Hannah's name on the checks for the purpose of collection, or for the purpose of obtaining cash therefor, and that such authority was not restricted to the savings account.

Plaintiff contends that even though Hannah empowered Blackwell to indorse checks, nevertheless the defendant did not know about it at the time and, therefore, cannot now assert such a defense. It is a matter of common knowledge that when a check is deposited with a bank and the check is not drawn on that bank, such check is credited conditionally. The check is then collected from the drawee bank through the clearing house, or other banking channels. The drawee bank, although primarily responsible to the drawer of the check, nevertheless in honoring the check, also relies on the skill, care and responsibility of the forwarding or collecting bank. Defendant contends that it is not necessary to show that it had knowledge of, or that it relied upon the agency, if, in fact, the agent did have the authority. It cites the case of *Doan v. Duncan,* 17 Ill. 272, 275; *Moffet v. Moffet,* 90 Iowa 442, 57 N. W. 954; *Gallinger v. Lake Shore Traffic Co.,* 67 Wis. 529, 30 N. W. 790. On the other hand, plaintiff cites the case of *Fay v. Slaughter,* 194 Ill. 157. We have carefully considered this case and are of the opinion that the facts are not analogous to the facts in the case at

bar. We are of the opinion that even though defendant did not know of the existence of the power of attorney at the time it honored the checks, nevertheless it has a right to rely thereon in establishing the authority of Blackwell to act for his wife.

As a second theory of defense the drawee bank advances the proposition that even if the indorsements and deposits constituted a wrongful act, no damage has been proven and therefore recovery must be denied. It argues that the evidence shows that the proceeds of the checks did reach Hannah just as effectively as if they had been paid to her and she had disbursed them in payment of expenses and bills which she was in any event, obligated to pay. Under this point defendant traces the use made of the funds that were deposited in the joint checking account, and attempts to establish that Hannah received the benefit thereof, and that thereby, in effect, she suffered no loss. In view of our holding that defendant affirmatively established that Blackwell had the express authority to indorse the checks and to deposit them in the checking account, and thereafter draw out the funds, it is unnecessary for us to extend this opinion by discussing the second point.

For the reasons stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.