# Cass *versus* Pittsburg, Virginia and Charleston Railway Co.

1. A subscription to railroad stock was " on condition that in the judgment of the directors * * * a sufficient amount is subscribed * * * to grade and bridge the road, including right of way ; * * * otherwise these subscriptions shall be void." The directors passed a resolution that in their "judgment * * * sufficient stock had been subscribed," &c. *Held*, if the board acted in good faith in passing the resolution, the condition was performed.

2. Evidence that the actual cost of grading and bridging and right of way was much in excess of the amount subscribed, was not admissible for the defendant in a suit for his subscription. The bona fides of the directors' judgment was to be tested, not by the event, but by what was before their minds when the resolution was passed.

3. Evidence was admissible for defendant that the agent of the company who procured his subscription agreed to hold it until he should authorize its delivery to the company, and that a person not a director obtained the paper to look at, and without consent of the agent or defendant delivered it to the company.

4. As a general rule, delivery of the deed as an escrow cannot be made to the grantee.

5. When an absolute deed is delivered to the grantee his acceptance is presumed ; subsequent acceptance relates to the first delivery.

6. If by a condition a contractor imposes a burden upon the other party, the latter must expressly or impliedly accept before it is binding on both.

7. The agent who took the subscription was not incapacitated from making such agreement, and had no authority to accept the condition.

8. Representations made at the time of taking the subscription were not evidence for defendant.

9. Gross inadequacy of the subscription to the cost at the time the resolution was passed would be evidence of bad faith.

10. A party may conclude himself before any controversy has arisen by the judgment of the other party or a stranger upon what at the time of the contract is uncertain.

11. When notified that an instalment was payable, the defendant replied, that he was not a stockholder and that therefore the notice was error : *Held*, that this was a waiver of notice of calls for instalments, under the 8th sect. of Act of February 19th 1849, and the penalty of one per cent. per month was recoverable for non-payment of instalments.

October 7th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1875, No. 251.

This was an action of assumpsit, brought to the September Term 1872 of the court below, by The Pittsburg, Virginia and Charleston Railway Company, against George W. Cass, to recover the amount of the following subscription, and the penalty of one per cent. per month for non-payment of instalments as called for.

"We, the undersigned, hereby severally subscribe to the capital stock of the Pittsburg, Virginia and Charleston Railway Company, and promise to pay to the treasurer of said company the several sums set opposite our respective names; Provided, and on condition that in the judgment of the board of directors of said company

[Cass *v.* Pittsburg, Virginia & Charleston Railway Co.]

a sufficient amount is subscribed to the capital stock of said company on or before the 1st day of April 1871, to grade and bridge the road, including right of way, from South Pittsburg to West Brownsville, otherwise these subscriptions shall be void and of no effect.

| " Name. | No. of shares. | Amount. |
| --- | --- | --- |
| George W. Cass, | 400 | $20,000" |
| * * * | * * | * * |

The distance mentioned in the subscription is about 56 miles.

The plaintiffs were incorporated under the Act of April 8th 1867 (Pamph. L. 1867) and its supplements, subject to the provisions of the General Railroad Law of February 19th 1849 (Pamph. L. 79). The 8th section of the law of 1849 (2 Br. Purd. 1216, pl. 25,) provides:—

"The capital stock of such company shall be divided into shares of fifty dollars each, and shall be called in and paid at such times and places, and in such proportions and instalments, not, however, exceeding five dollars per share, in any period of thirty days, as the directors shall require, of which public notice shall be given for at least two weeks next preceding the time or times appointed for that purpose, in the manner above mentioned; and if any stockholder shall neglect to pay any such proportion or instalment so called for at the time and place appointed, he, she or they shall be liable to pay in addition to the proportion or instalments so called for, at the rate of one per cent. per month for the delay of such payment."

The case was tried, December 18th 1873, before Collier, J.

The plaintiffs gave the subscription in evidence, and the following preamble and resolutions, passed by the board of directors on the 1st of April 1871:—

" Whereas, certain subscriptions to the capital stock of this company have been made on condition that, in the judgment of the board of directors of said company, a sufficient amount is subscribed to the capital stock of said company, on or before the 1st day of April 1871, to grade and bridge the road, including the right of way from South Pittsburg to West Brownsville; therefore be it

" Resolved, That in the judgment of this board the conditions named are fully complied with; that sufficient stock has been subscribed to grade and bridge the road, including the right of way from South Pittsburg to West Brownsville."

They gave evidence also that at the meeting of the directors the question whether there was sufficient stock subscribed to go on, in accordance with the subscription, was discussed and considered, and that the same question had been " talked over" by the directors before the meeting.

They then gave evidence that calls were made for instalments every month; that ten notices of the calls were sent to the defendant, and that he had not paid any.

They then gave in evidence the following letter:—

"Pittsburg, June 14th 1871.

"J. R. JACQUES, Esq., Sec'y Pittsburg, Va. and Charleston Railroad Co.

"Sir—I received this morning your notice of the 29th May, (date) of a second instalment (I have received no notice of a *first* instalment) of $5 per share on 400 shares of the capital stock of the Pittsburg, Va. and Charleston R. R. Co., formerly, now Valley R. R.

"I am not aware of being a stockholder or having subscribed to the stock of this corporation, and therefore your notice to me is in error.　　　　Truly yours,　　　.　　.　　G. W. CASS."

The defendant gave evidence for the purpose of showing that the cost of doing the work, &c., contemplated in the subscription was, at the time of the passage of the resolution by the directors, far in excess of the amount subscribed.

He gave evidence also that he had no notice of the meeting of the directors on the 1st of April 1871, and was not present at it.

He also made the following offers of evidence, all which were objected to by plaintiffs, rejected by the court, and several bills of exception sealed:—

1. To prove the cost of grading and bridging, including right of way, of that portion of the plaintiffs' road already completed, to wit: the thirty miles of road between South Pittsburg and Monongahela City, and that the cost thereof was largely in excess of the amount of subscriptions to the capital stock of the company on the 1st of April 1871; and that to provide means to complete the same, the plaintiff executed a mortgage on its road, property and franchises for some $700,000, and negotiated the same.

2. To prove that the plaintiffs' road (as located on April 1st 1871), beginning in South Pittsburg, passed through that borough and the adjoining boroughs of Birmingham and East Birmingham, taking much valuable private property therein; and that the cost of right of way through those three boroughs alone was more than the entire amount which had been subscribed to the capital stock of the plaintiff company prior to and on April 1st 1871.

3. To prove by W. W. Martin that he was authorized by the board of directors to solicit subscriptions to the capital stock of the plaintiffs under a certain form; that on presenting this form to defendant, he declined to subscribe, except upon condition that his subscription should not become valid unless enough was subscribed to grade and bridge the road and secure the right of way to West Brownsville; that accordingly the form of subscription was then and there altered by witness and defendant so as to set forth such condition; that before such conditional subscription was reported to or accepted by the company, at the re-

[*Cass v.* Pittsburg, Virginia & Charleston Railway Co.]

quest of defendant, witness agreed to hold back defendant's sub-
scription until defendant should authorize him to hand it to the
company, and afterwards Mr. Scott, not then a member of the
board, obtained the defendant's subscription from witness under
pretence of merely wishing to look at it, put it into his pocket, and,
without consent of witness or defendant, delivered it to the com-
pany; and that in fact defendant's subscription never was deli-
vered to the company with his consent.

4. George W. Cass, the defendant, being on the stand, the de-
fendant's counsel propose to ask the witness what representations
were made to him at the time of his subscription to induce him to
make the same.

The plaintiffs, in rebuttal, gave evidence showing estimates, made
before the passage of the resolution, of the cost of the work, &c.,
on the road, tending to show that it would not be in excess of the
amount of stock then subscribed.

The plaintiffs' 4th point and answer were:—

The plaintiffs if entitled to recover are entitled to recover twelve
per cent. interest on the amount of the subscription.

Answer. "This point is affirmed.   On June 14th 1871, Gen-
eral Cass wrote a letter, which has been read to you, and in which
he acknowledges the receipt of a call for the second instalment of
the stock subscription.   He says : ' I am not aware of being a stock-
holder * * *.'   After that notice, it was not necessary for the com-
pany to make any more calls.   The defendant can be held as if he
had notice, and as the Supreme Court has decided that this one per
cent. a month, under the Act of Assembly, is a statutory interest,
put on in the way of penalty, and is legal, you will add that to the
amount of the subscription, if you find for the plaintiffs."

The defendant's points and answers are:—

1. By the terms and legal effect of the defendant's subscrip-
tion, it was necessary, in order to make it finally binding on him,
that there should have been enough subscribed reasonably to justify
the board of directors in concluding that therewith the road could
be graded and bridged from South Pittsburg to West Brownsville,
and all rights of way acquired.   That the hasty, inconsiderate and
unfounded judgment of the board, even if in good faith, would not
be sufficient to bind the defendant.

Answer. "This point is refused.   The defendant left it to the
judgment of the board, and agreed to pay whenever in their judg-
ment enough had been subscribed."

2. If the jury believe from the evidence, that on the 1st day
of April 1871, the amount of subscription to the capital stock of
the plaintiff company was grossly inadequate to pay for the grad-
ing and bridging of its road from South Pittsburg to West Browns-
ville, and, as ordinarily intelligent men, the directors of the com-
pany must have known the fact, the passage of the resolution of
April 1st 1871 does not bind the defendant.

[Cass v. Pittsburg, Virginia & Charleston Railway Co.]

Answer. "The question for you to determine is, was the judgment of the board an honest judgment, made in good faith? The facts alleged in this point are left to you with the other facts in the case, to aid you in determining the question of good faith. You must find before the defendant can escape, that the board acted in bad faith; but if the board did not act in bad faith the defendant will have to pay his subscription, in accordance with his promise and bargain."

3. If the first point be refused, if the judgment of the board, though unfounded on facts and grossly incorrect, was to bind the defendant, if formed in good faith, then such judgment was *quasi* judicial and in the nature of an award, and defendant was entitled to notice and a hearing before the board had a right to decide finally as to whether the condition on which he subscribed had been performed.

This point was refused.

The verdict was for the plaintiffs for $25,300.

The defendant took a writ of error. He assigned for error:—

1-4. The rejection of his several offers of evidence.

5-7. The refusal of his points.

8. Affirming the plaintiffs' fourth point.

*M. W. Acheson* and *H. Burgwin*, for plaintiff in error.—A subscription to railway stock on condition is but an offer and has no validity until accepted by the company : Junction Railway Co. *v.* Reeve, 15 Ind. 236. If the amount subscribed was grossly inadequate for the cost of the road, it was constructive fraud : Tompkins *v.* Saltmarsh, 14 S. & R. 279. The directors should not have acted on the subscription without notice to the defendant: McMahon *v.* N. Y. & Erie Railroad, 6 Smith (N. Y.) 463; Hollingsworth *v.* Leiper, 1 Dall. 161. The representations made to defendant when making the subscription were evidence : Powelton Coal Co. *v.* McShain, 25 P. F. Smith 238; Shugart *v.* Moore, 28 Id. 469. As to the 12 per cent. penalty, they cited Custar *v.* Titusville Gas & W. Co., 13 P. F. Smith 381; Gray *v.* Monon. Nav. Co., 2 W. & S. 162.

*J. Dalzell* and *G. Shiras, Jr.*, for defendants in error.—The subscription of defendant, although conditional, bound him when accepted and acted on by the company : Custar *v.* Titusville Gas & W. Co., 13 P. F. Smith 381. To permit the validity of the subscription to be determined by the actual cost afterward ascertained, would be submitting the question to the judgment of the jury, not to the judgment of the directors, and thus making a new contract without the assent of the parties : Nelson *v.* Von Bonnhorst, 5 Casey 354. As to the 12 per cent. penalty, they cited Hays *v.* Pitts. & Steub. Railroad Co., 2 Wright 81.

[Cass *v.* Pittsburg, Virginia & Charleston Railway Co.]

Mr. Justice SHARSWOOD delivered the opinion of the court, May 29th 1876.

The subscription of the plaintiff in error to the stock of the defendants was upon condition "that in the judgment of the board of directors of said company a sufficient amount is subscribed to the capital stock of said company on or before the 1st day of April 1871, to grade and bridge the road, including the right of way from South Pittsburg to West Brownsville." The board of directors on the 1st day of April 1871 passed a resolution, "that in the judgment of this board the conditions named are fully complied with; that sufficient stock has been subscribed to grade and bridge the road, including the right of way from South Pittsburg to West Brownsville."

The contention of the plaintiff in error was that this resolution was not a bonâ fide exercise of the judgment of the board, and that question was submitted by the learned judge below to the jury and was passed upon by them.

The first two assignments of error are to offers by the plaintiff to prove that the actual cost of portions of the road and of the right of way was much in excess of the whole amount of subscriptions on or before the 1st of April 1871. We are of opinion that these offers were rightly rejected as irrelevant to the issue. The bona fides of the judgment of the board could not be tested by the event. The plaintiff had agreed to be bound by that judgment, and nothing was properly relevant and admissible which did not bear upon the question it presented to the minds of the directors at the time fixed. They could not be expected to foreknow the future.

The third assignment of error is to the rejection of an offer to prove in substance, that the agent of the defendants by whom the subscription had been procured, before it was reported to or accepted by the company, at the request of the plaintiff, agreed to hold back the subscription until he should authorize him to hand it to the company, and that afterwards a third person, not a member of the board, obtained possession of the paper, under pretence of merely wishing to look at it, put it into his pocket, and without consent of the agent or defendant, delivered it to the company. We think this evidence ought to have been received. It is true as a general rule that delivery of a bond or deed as an escrow cannot be made to the obligee or grantee. That principle, however, does not apply in this case. When a delivery of an absolute deed is made to the party, his acceptance is presumed primâ facie, because it is for his benefit. Then subsequent acceptance relates to the first delivery. So it might have been now, had the subscriptions been absolute. But it is different when the condition imposes a burden upon the other party. He must then expressly or impliedly accept before the contract becomes completely binding on

[Cass *v.* Pittsburg, Virginia & Charleston Railway Co.]

both parties. When such contract is made with an agent he may well agree to hold it as an escrow. Until both sides agree, if revocable by one it must be so also by the other. Martin, the agent, had no authority to accept the conditions and was not incapacitated from making such an agreement by his relation to the company.

The fourth specification of error, on account of the rejection of the offer of the plaintiff to prove what representations were made to him at the time of his subscriptions, cannot be sustained. It was not offered to show by whom the representations were made, nor what they were, and it is clear, according to Custar *v.* Titusville Gas and Water Co., 13 P. F. Smith 381, the offer was inadmissible and was therefore rightly rejected.

The plaintiff's first and second points, the refusal to affirm which forms the subject of the fifth and sixth assignments, requested the court to instruct the jury in effect "that the hasty, inconsiderate and unfounded judgment of the board, even if in good faith, or if in point of fact the subscriptions were greatly inadequate," would not be binding on the plaintiff. We think the learned judge was right in refusing to affirm these points. It was in effect to substitute the judgment of the jury for that of the board, and that at a different point of time from that named in the contract. Their judgment upon the 23d of December 1873 would probably be very different from what it would have been on the 1st of April 1871. Gross inadequacy at that period would have been evidence of bad faith, but this was not the instruction requested.

The contention that the judgment was quasi judicial, and that it was necessary that the plaintiff should have notice and an opportunity to appear and be heard, has no foundation. It is but one of many instances to be found in the books, that one party may conclude himself beforehand, and before any controversy has arisen, by the opinion or judgment of the other party or of a stranger, upon what, at the time of the contract, is in uncertainty. Without an express stipulation, he is not entitled to notice or hearing.

The last assignment of error is to the affirmance of the fourth point of the defendants in error, the plaintiffs below, "that the plaintiff is entitled to recover twelve per cent. interest on the amount of the subscription." The defendants were incorporated under the Act of April 8th 1867, Pamph. L. 897, and its supplements, subject to the provisions of "An Act regulating railroad companies," approved February 19th 1849, Pamph. L. 79. The eighth section of the Act of 1849, after providing that the capital stock shall be called in and paid at such times and places, and in such proportions and instalments, not, however, exceeding five dollars per share in any period of thirty days, as the directors shall require, of which two weeks' public notice shall be given, proceeds to declare that "if any stockholder shall neglect to pay any such

[Cass *v.* Pittsburg, Virginia & Charleston Railway Co.]

proportion or instalment so called for at the time and place appointed, he, she or they shall be liable to pay, in addition to the proportion or instalment so called for, at the rate of one per cent. per month for the delay of such payment." Upon receiving notice of the call for a second instalment, the plaintiff in error addressed a note to the secretary of the company, in which, after denying notice of the first instalment, he says: "I am not aware of being a stockholder, or of having subscribed to the stock of this corpora-. tion, and therefore your notice to me is in error." After this distinct and unequivocal repudiation of his subscription, it was no longer necessary to give him notice of the calls. It was a waiver of all notice, and operated in all respects as if the notices had been regularly given. Admitting the rate of interest to be a penalty, it was a necessary consequence of his waiver, that it was incurred by the non-payment of the calls without notice. We think there was no error in the affirmance of this point.

Judgment reversed, and *venire facias de novo* awarded.