DANIEL J. DAVIS AND THOMAS RANKIN v. WILLIAM KNEALE.

*Principal and agent— Evidence— Pleading— Subscription— Conditional agreement—Estoppel.*

1. The mere act of an agent is not admissible as proof of his authority.
2. A defendant may always show, under the plea of the general issue, that the agreement sued upon was never made.

3. One who signs an agreement to pay a certain sum to secure the starting of an enterprise at the solicitation of a third person, who is working up the scheme, and upon condition that the agreement is to be retained by him until its delivery is authorized by the subscriber, whose name alone appears upon it, of which facts the agent of the parties to whom the subscription is to be paid has knowledge, is not estopped from showing such facts and the violation of the condition in a suit brought by said parties to recover the subscription.

4. Want of authority on the part of the agent and third person to make the conditional agreement will not deprive the defendant of the right to rely upon it.

5. Evidence of the making of a similar agreement with another subscriber is inadmissible in support of defendant's claim.

Error to Ionia. (Smith, J.) Argued June 15, 1893. Decided October 2, 1893.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*John S. Bennett* and *Ellis, Nichols & Miller,* for appellants.

*R. A. Hawley,* for defendant.

HOOKER, C. J. Davis & Rankin, engaged in the business of erecting creameries, executed an agreement to erect one of their creameries for a specified price. It was signed on their behalf by one M. J. Briggs, their agent. The contract was signed by a number of residents of the vicinity, each undertaking to pay to Davis & Rankin the amount set opposite his name. Defendant signed the paper, affixing opposite his name the sum of $100. Upon completion of the work defendant refused to pay, and this action was brought. The defendant filed a plea of the general issue, accompanied by an affidavit denying the execution of the writing. He offered testimony tending to show that he signed the writing, and delivered it to one Carbaugh, under the following circumstances: Carbaugh, a neighbor,

and Briggs, plaintiffs' agent, called upon defendant, and wanted him to subscribe $100. Carbaugh said he was acting on his own hook, trying to get up a creamery. Defendant refused. He was finally prevailed upon to sign it "for a starter," upon the understanding that Carbaugh should not let the paper go out of his hands until defendant authorized it, which he never did. He was informed of the delivery after he was sued. Upon the rebuttal this was contradicted by Carbaugh. A verdict having been rendered for the defendant, plaintiffs appealed, claiming:

1. That the pleadings did not warrant the defense made.

2. That defendant's acts estop him from making such a defense.

3. That such defense could not be made without showing that Carbaugh had authority from Davis & Rankin to make such an arrangement as defendant claims.

4. That certain testimony offered to show that Carbaugh made a similar arrangement with one Barnard was inadmissible.

5. That the reinstating of such evidence after it was stricken out was error, no opportunity for cross-examination being given.

1. Plaintiffs' counsel maintain that they were entitled to a special notice of the defense. Under the plea of the general issue, a defendant may always show that the agreement sued upon was not made. This defendant says: "It is true that I signed a paper, but I never authorized Davis & Rankin to treat it as a contract. I never had any negotiations with them. Carbaugh and I had some talk about such a contract, but I did not agree to the use of the writing as a contract. At that time it was not signed by anybody but myself. It lacked the essential elements of a contract when I last saw it." If this is true, it is a complete defense, so far as the question of pleading is concerned, for it is a mere denial of what plaintiffs are required to prove.

2. The claim that defendant should be estopped by

his subscription is based upon the theory that, by signing "as a starter," he was inducing others to do that which they would not otherwise have done. We cannot look with favor upon one who signs a subscription with a secret agreement for immunity, thereby lending himself to the scheme of inducing others to sign upon the faith of his connection with the enterprise; and while, under some circumstances, such person will not be allowed to escape liability, under others he may. In the present case, if defendant's claim is true, he put an effective bar to imposition upon others, so long as he withheld his consent to the delivery of the subscription; and if Briggs, the agent of the plaintiffs who signed the contract for them, knew this, the plaintiffs were in no manner deceived, and could not insist upon any estoppel. In this connection, it may be said that if the defendant permitted the delivery of the writing, relying upon an understanding that his name should be struck off by Carbaugh, who was in no sense an agent of plaintiffs, and if the plaintiffs and their agent, Briggs, were ignorant of the agreement, and relied upon the subscription, and were induced to expend money thereby, an estoppel might exist. But the fifth request, which was aimed at such a proposition, was properly refused, because it asked too much. It would, if given, have permitted plaintiffs to recover upon an estoppel if they were ignorant of the agreement, although their agent, Briggs, knew all about it.[1]

3. The proposition that defendant must be bound by his subscription, because Briggs and Carbaugh were not authorized by plaintiffs to make any other arrangement than

---

[1] The fifth request was as follows: "If the jury find that the plaintiffs in this case had no knowledge of the contract as claimed by the defendant, but received the contract in good faith, relying on its genuineness as shown upon its face, and went on and erected the building, relying thereon, then, in such case, the defendant is liable upon his contract, and your verdict should be for the plaintiffs."

the one claimed by the plaintiffs to have been made, is not tenable. It may be that such a contract would not bind the plaintiffs, but it can hardly be said to follow that the defendant must be bound by a contract that he did not make, simply because the persons with whom he was dealing had not authority to make the one agreed upon.

4. Some testimony was introduced by defendant tending to show that Carbaugh made an arrangement with one Barnard similar to that claimed by the defendant. If this was introduced to show that plaintiffs' agent had authority to do this, it was inadmissible. It was proving authority by the mere act of the agent, which is not permissible. If it was to raise an inference that the agreement alleged by defendant was made, from the fact that a similar one was made with Barnard, it was inadmissible. It is claimed that no exception was taken to this, but the counsel had a right to understand from the remark of the court that he was given an exception.[1]

For this error the judgment will be reversed, and a new trial ordered.

LONG and MONTGOMERY, JJ., concurred with HOOKER, C. J. GRANT, J., concurred in the result. McGRATH, J., did not sit.

---

[1] In reinstating the testimony the court said: "Let it be considered in the case. I will give you an exception if you wish."