## DANIEL J. DAVIS AND THOMAS RANKIN v. WILLIAM KNEALE.

[See 97 Mich. 72.]

*Contract—Escrow—Delivery.*

The direction of a verdict in favor of the defendant, on the ground that the contract sued upon had never been delivered to the plaintiffs, is sustained.

Error to Ionia. (Dodds, J., presiding.) Argued November 2, 1894. Decided December 22, 1894.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion, and in 97 Mich. 72.

*George E. & M. A. Nichols,* for appellants.

*R. A. Hawley,* for defendant.

GRANT, J. For a general statement of the nature of this case, see 97 Mich. 72. Upon the second trial the court directed a verdict for the defendant upon the ground that the contract signed by Kneale had never been delivered. This charge was based upon certain statements made by three witnesses, Pilkington, Caswell, and McClellan, which were admitted by counsel for plaintiffs to be true. Mr. Briggs, the agent of plaintiffs, testified as follows:

"I explained to Mr. Kneale that this signing, it didn't bind him unless we got enough to sign to amount to at least $5,300, that being the price of the cheapest plant. A question arose in regard to our house that I represented, and this creamery business, and I said to Mr. Kneale that we had a meeting down town, and a committee of gentlemen had been appointed to help me go around and ride with me, and to introduce me to the farmers from place to place; that Mr. Carbaugh was one; that these contracts were in the hands and under the control of the committee until the amount was raised, and if, any time before the amount was raised, they found that there was a fraud in it, or anything wrong, that the committee were authorized to burn the contracts up, and never deliver them."

Mr. Caswell stated the arrangement concisely, as follows:

"The committee were to go around and solicit subscriptions, and see if they could raise the $6,000; and, providing we could, and the building was completed, that before the building was accepted, or before we were to pay any of our subscriptions, we were to appoint two mechanics out of the village there, that we thought were competent, and he would pay their fare to Iowa or Illinois, where these creameries were being built, and let them look them over; and, if this creamery was satisfactory, after they came back we were to pay our subscriptions, and, if it wasn't, why, the subscriptions were null and void, if everything wasn't satisfactory.

"Q. What was said, if anything, in regard to it if you found anything wrong about the transaction or the scheme, or anything fraudulent in it,—as to whether the contract should be delivered or not?

"A. It was not to be delivered.

"*Q*. Whose hands were these contracts to remain in until delivery?

"*A*. The committee's hands, of course."

Mr. McClellan testified that the committee ascertained through correspondence that the price of the creamery ($6,000) was too high, and that it could be built cheaper; that he so stated to Mr. Briggs, who agreed to build it for $1,500 less; that he took this proposition to the committee, and a day or two afterwards told Mr. Briggs that he thought they could raise the amount ($4,500), but that Mr. Briggs refused, and said that if he remained, and helped to raise the money, he must have the $6,000. The committee then met, and voted to abandon the scheme, and so notified Mr. Briggs. He left town for a few days, but returned, completed the subscriptions to the full amount, and built the creamery. The testimony of the other witnesses is substantially the same as that of Mr. Caswell, except that Mr. Pilkington testified that the committee should ascertain in regard to the price, which was to be as low as the creamery could be purchased.

We think the court was correct in directing a verdict for the defendant. Counsel for plaintiffs argue that the sole condition precedent to the delivery or abandonment was that the committee should go to Illinois or Iowa and make the investigation. The difficulty with this argument is that it leaves out of consideration the testimony of Mr. Pilkington that the price was to be as low as the creamery could be purchased, and that they were not limited to those two states, but might make the investigation anywhere they chose. They did investigate the price, and submitted their evidence to Mr. Briggs, who agreed to reduce it $1,500, but afterwards refused to do so. The investigation into the price could just as well have been made in Michigan as in any other state, and no place was specified by the agreement in which it was to be made. It was

made. The committee met, resolved not to go on because of the price, so notified Mr. Briggs, abandoned further action, and disbanded. The committee took no further action as a committee, and whatever its members may afterwards have done individually was not binding upon defendant. At the time of this action the contract had not been delivered. The amount required to warrant delivery had not been raised. How it came into the hands of Mr. Briggs does not appear. It is sufficient to say that it was never delivered by the committee.

Judgment affirmed.

The other Justices concurred.