Argued September 26, decided October 14, rehearing denied November 11, 1913.

# PORTLAND PUBLIC MARKET v. WOODWORTH.

### (135 Pac. 529.)

**Appeal and Error—Preparation—Contents.**

1. Where a bill of exceptions contains a literal report of the testimony of the witnesses, remarks of court, etc., instead of enough of the evidence to show the application of rulings on evidence, such rulings will not be reviewed.

**Corporations—Stock—Subscription—Conditions.**

2. Where defendant was solicited to sign a stock subscription contract by an agent of the corporation, he was authorized to make the delivery of his subscription conditional and. to make the solicitor his agent to retain custody of the same until the conditions had been performed.

**Corporations—Subscription Contract—Conditions—Pleading.**

3. Where, in an action on a stock subscription contract, defendant alleged that he delivered the same only on condition that the solicitor obtain the signatures of certain fruit growers thereto, and in case he failed to do so he would not deliver the subscription, and that he failed to obtain the subscription of such growers but nevertheless delivered the paper to the corporation, it amounted to an allegation that defendant's subscription was never legally delivered as a contract, and it was therefore error to construe it as an admission of a completed subscription.

> [As to nature and validity of subscription to corporate stock, see note in 136 Am. St. Rep. 736. As to liability of subscriber to stock, see note in 93 Am. St. Rep. 349. As to when subscriber to stock becomes stockholder, see note in Ann. Cas. 1913C, 418.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

The Portland Public Market & Cold Storage Company, a corporation, alleging that G. D. Woodworth, in writing, subscribed and agreed to pay for 100 shares of its capital stock of the par value of $100 per share, brings this action against him on four counts to recover levied assessments.

The defendant, after denying most of the allegations of the complaint, states substantially that one

King, representing himself to be the treasurer and general manager of the plaintiff, with intent to defraud the defendant, and for the purpose of inducing him to enter into a conditional contract of subscription, knowingly made false representations respecting the previous subscribers for stock and the property owned by the corporation and proposed to the defendant that they two should solicit certain prominent fruit growers to purchase the stock to be represented in the conditional subscription, and that, if the fruit growers would not take the shares, the subscription should be returned to defendant, canceled and held for naught. The answer then avers "that the defendant, relying and believing each and all of said false and fraudulent representations so made by the said King, and being deceived thereby, signed a subscription paper for 100 shares of the capital stock of said alleged corporation of the par value of $100 per share and delivered the said subscription to the said King as an escrow under an agreement then and there made between the defendant and the said King that the said subscription was to be held by him (the said King) as an escrow and upon condition that if said fruit growers to be named by the said defendant should not subscribe for or purchase and agree to pay for all of the said $10,000 worth of capital stock, evidenced by said conditional subscription, in that event the said subscription paper was to be returned to the defendant and the same to be absolutely null and void and to be redelivered to the defendant, and that the said conditional subscription was to be delivered to the plaintiff company only in case the said King should secure said subscriptions from said fruit growers for $10,000 worth of the capital stock of said alleged corporation, represented by said subscription paper, and until the said $10,000 was fully subscribed should not

stand in force; and it was further agreed at said time between the said King and the defendant and at the time said subscription was delivered to the said King as an escrow that, in case the said purchasers of said stock should fail to pay for the same, the same was to be resold or repurchased by the company before any call was made thereon for payment against the defendant.'' It is then stated ''that thereafter said defendant and the said King applied for and tried to secure subscriptions or purchasers for said $10,000 worth of said stock from the said fruit growers, but that none of them would subscribe for or purchase any of said stock, and that thereupon the said King informed the defendant that he had abandoned the attempt to secure such fruit growers as subscribers or purchasers of said stock, and that he had destroyed the said subscription and agreed with the defendant that the same was of no further force and effect; that about the month of April, 1909, the defendant ascertained for the first time that the said representations so made by the said King to the defendant were false and fraudulent and also ascertained that the said King had turned over the said subscription that he had held in escrow to the plaintiff company; that immediately upon discovering the said fraud and the said acts the defendant returned to the said plaintiff company the ten shares of stock so given by the said King to him as consideration of his services in going with the said King and demanded the return of said subscription paper; that the defendant had no knowledge and never consented that the said subscription paper should be turned over to the said company, and that no contract of subscription was ever entered into between the plaintiff and defendant, and that the same was wholly void.'' This matter was traversed by the

reply. From a judgment in favor of the plaintiff as the result of a jury trial, defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Joel M. Long, Mr. Miller Murdoch* and *Mr. Andrew A. Jayne,* with an oral argument by *Mr. Long.*

For respondent there was a brief over the names of *Mr. Hugh Montgomery* and *Messrs. Platt & Platt,* with an oral argument by *Mr. Montgomery.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The bill of exceptions upon which the court is asked to determine this case consists of a literal report of the testimony of the witnesses, the badinage of counsel, the remarks of the court and various other matters occurring at the trial, repeated with machine-like accuracy. So far as concerns the various objections to testimony noted in the appellant's brief, the court cannot consider them for want of a proper bill of exceptions. It has been many times repeated by the court that, in order to properly present such questions, so much of the testimony, and no more, as is requisite to the determination of the particular question should be stated with that question. In the very nature of the case and the state of the business of this court, we cannot wade through such a mass of words as is here presented to detect the several errors complained of in the admission and exclusion of testimony: *Keady* v. *United Rys. Co.,* 57 Or. 325 (100 Pac. 658); *Hahn* v. *Mackay,* 63 Or. 100 (126 Pac. 12, 991).

There are set out, however, in the bill of exceptions the instructions of the court to the jury and the exceptions of counsel for plaintiff to those instructions.

As these directions to the jury are based upon the court's construction of the defendant's answer, the bill properly presents that question for our consideration. All these likewise appear in the printed abstract, complying with rule 9 of this court (56 Or. 620, 117 Pac. x). The trial judge instructed the jury that "the pleadings admit the subscription to the stock." So far as the mere physical act of signing the subscription is concerned, it was finished so far as the defendant could complete it. It is not in issue under the quoted answer whether the court will admit testimony to vary the terms of a written instrument. The question presented by the excerpt from that pleading is whether or not the subscription was made at all so as to give it effect as an executed contract.

2. It is competent for the defendant to sign the subscription and make the solicitor his own agent for the purpose of retaining custody of the same until some other things have been accomplished. While it is true as a general principle that the delivery of a deed or other writing obligatory to the person in whose favor it is made completes the transaction and gives binding force to the instrument, yet there are exceptions to the rule in cases where the grantee is represented by an agent. It is laid down by many authorities, for instance, that there is no such identity of a corporation and the individual, who at the time is acting as its representative, that would prevent the grantor from making a depositary of the corporation's servant: *Cass* v. *Pittsburg & Charleston Ry. Co.,* 80 Pa. 31; *Great Western Tel. Co.* v. *Loewenthal,* 154 Ill. 261 (40 N. E. 318); *Ottawa R. R. Co.* v. *Hall,* 1 Ill. App. 612; *Davis* v. *Kneale,* 97 Mich. 72 (56 N. W. 220); *Smith* v. *Mussetter,* 58 Minn. 159, 162 (59 N. W. 995); *Alabama Coal & Coke Co.* v. *Gulf Coal & Coke Co.,* 165 Ala. 304 (51 South. 570).

3. The effect of the defendant's answer in this respect was not to impeach an instrument already executed and delivered, designed at the time to take full effect, but, on the contrary, was to show that the instrument had never been delivered and had never been intended to take effect. Reliance was placed by the plaintiff on *Johnson* v. *Sheridan Lbr. Co.*, 51 Or. 35 (93 Pac. 470), holding that, where a pleading denies the execution of an instrument but affirmatively admits its execution for a specific purpose, the admission controls. In that case, however, the promissory note upon which the action was brought had been executed by the corporation and delivered to the payee with the intent at the time that it should have full effect as an instrument for the payment of money. The defense was based upon the fraud of plaintiff and his associates in procuring the note. Under those circumstances the court very properly held that the admission of its execution and delivery would control the denial of the same in another part of the pleading. The distinction between the two classes of cases is pointed out by Mr. Justice Moore in *Tyler* v. *Cate,* 29 Or. 515, 524 (45 Pac. 800, 803), in this language: "Counsel for plaintiff cite in their brief and seem to rely upon the case of *Allen* v. *Ayer,* 26 Or. 589 (39 Pac. 1), as supporting the doctrine that a deed fraudulently obtained by the grantee is not void but voidable merely and passes the title. Such is the law in some cases, for if the grantor be induced by fraud, or any other means, to voluntarily deliver the deed to the grantee, the act manifests the assent of the grantor to the contract and passes the title; and, this being so, an innocent purchaser from the grantee for a valuable consideration would take the title freed from any equity of the grantor, but this rule can have no application to a deed deposited as an escrow. * * A deed deposited as an escrow is nothing more than

a mere scroll until the condition is fully performed or the contingency happens upon the faith of which it was deposited; and, this being so, no delivery of the scroll prior to that time without the grantor's consent could give life to the instrument or convey the title to the grantee or purchaser under him.'' This principle distinguishes all the authorities cited in plaintiff's brief to the effect that ''any secret agreement between a subscriber and a corporation or its agent that he is to have privileges not extended to all other subscribers is contrary to public policy, null and void, a fraud upon the other stockholders and all creditors. * * '' In all these cases the instrument in question had been delivered with the present intention of giving it full effect according to the terms on its face. The answer of the defendant clearly shows that the subscription was never delivered and was never intended to have any effect until the happening of contingencies therein described, which it is said never occurred. To give effect to an instrument under such circumstances would be to make a man's bank account liable for a stolen check left locked up in the safe of the maker. The court, in effect construing this pleading, took from the jury the question of the validity of the subscription and, apparently relying upon the language of the answer that the defendant had ''signed a subscription paper for 100 shares of the capital stock,'' said to the jury that the defendant admitted the subscription to the stock. The court was at fault in thus construing the answer of the defendant to his manifest injury in the most vital question of the case.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.   Reversed.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Ramsey concur.