THOMAS BARRY v. BOSTON MARINE INSURANCE COMPANY.

*Marine insurance—Company only bound where agent has real or apparent authority—Which is limited by written commission—Courts will take judicial notice that November risks are greater than those taken in June —Insurance of yacht in tow—Cannot be construed as falling under description of cargo.*

1. An agent can only bind his principal where he has either *real* or *apparent* authority.

    So *held*, where insurance agents held their authority under a *written* commission, which gave them no power to *issue* policies except such as were *signed* by the president and secretary, and *under* the rules and regulations of the company, and *subject* to its instructions.

2. Courts will take judicial cognizance that insurance risks in November are greater than those in June.

3. Defendant's local agents took a blank certificate for insuring cargoes, and erased the words " under deck, on board the," and inserted "the steam-yacht ' The Vane,' towed behind the steam-barge ' R. G. Ingersoll,'" which they assumed to insure under and subject to the conditions of an " open policy" of defendant, headed " Inland Open Cargo," and which was not applicable by its terms to *hull* insurance.

    *Held,* that there is no rule of construction that could include a yacht in tow under the description of cargo, and, if insured at all, it must have been without any *limitations*, and no agent can be *presumed* to have authority to make *such* insurance, if he should attempt it; that the certificate undertakes to bring under the policy something entirely foreign to its provisions, and cannot be sustained.

Error to Muskegon. (Russell, J.) Argued June 30 and July 1, 1886. Decided July 15, 1886.

Assumpsit. Defendant brings error. Reversed *without* new trial. The facts are stated in the opinion.

*Delano & Bunker* (*C. E. Kremer*, of counsel), for appellant:

As to proof of agency in a case like this, see *Meister v. People*, 31 Mich. 107; *Sullivan v. Ross*, 39 Id. 511.

If the authority of the agent is in *writing*, the writing must be produced: 2 Greenleaf on Ev. (14th ed.) § 63; Ab-

bott's Trial Ev. p. 478, § 2; *Hartford Fire Ins. Co. v. Wilcox*, 57 Ill. 180.

Nor can parol evidence enlarge the scope of written authority: *Ashley v. Bird*, 14 Am. Dec. 313.

An agent cannot prove his agency or its extent by his own declarations: *Bacon v. Johnson*, 56 Mich. 182, and cases cited.

The *existence* and *extent* of the authority must be proved as a *fact*: May on Ins. § 173; *Meister v. People*, 31 Mich. 107.

The certificate is not a policy of insurance signed by any officer of the company, nor by any person having authority to act for or in its behalf: *Farmers' Ins. Co. v. Taylor*, 73 Penn. St. 342; *Security Ins. Co. v. Fay*, 22 Mich. 467.

The authority of Lewis & Co. was clearly defined in writing, and the defendant is not bound by an act of theirs not within it, unless by its acts it has justified the public or the plaintiff in believing that they had other 'or greater powers: *Same cases.*

The certificate was altered without authority, and referred to the conditions of an *open* policy; and this was sufficient to put plaintiff upon inquiry, and inform him of the extent of the agents' authority: *Baxter v. Lamont*, 60 Ill. 237; *Reynolds v. Ferree*, 86 Id. 570; May on Ins. §§ 137–8; *Payne v. Potter*, 9 Ia. 549.

Contracts of insurance are interpreted by the same rules as other contracts: May on Ins. §§ 172–3.

*Smith, Nims, Hoyt & Erwin*, for plaintiff:

Counsel assumed that Lewis & Co.'s appointment was in writing, and argue that the writing was the best evidence, and the oral testimony of the agents incompetent. Until the testimony disclosed the existence of such written authority the parol testimony was competent.

Again, the written instrument was the best evidence only of its contents, and that would go only to the scope of the agents' authority, not to its existence, which was all that was thus far sought to be shown.

Lewis & Co.'s *real* authority, as contained in the commission, was "full power to receive proposals for inland and marine insurance, to fix rates of premium, to receive moneys, and to countersign, issue, and renew policies of insurance, signed by the president and countersigned by the secretary of" defendant, "subject to the rules and regulations of said

company, and such instructions as may from time to time be given by its officers."

Their *apparent* authority, arising from the position in which they were placed by defendant, was "to do any act essential to effectuate the business committed to them, or that is fairly incident thereto:" Wood on Fire Ins. (2d ed.) § 422.

The business committed to the agents was that of marine insurance on hulls and cargoes, and for such purpose they were furnished with certain supplies, including the blank on which the contract with plaintiff was made; and plaintiff had a right to rely on *this* apparent authority.

Plaintiff applies for insurance, stating exactly what he wanted, and leaves the wording of the contract to the defendant, who makes a mistake in the form, of which it is trying to take advantage. This it cannot do: *Peoria Marine & Fire Ins. Co. v. Hall*, 12 Mich. 203; *North American Fire Ins. Co. v. Throop*, 22 Id. 146; *Ætna Ins. Co. v. Olmstead*, 21 Id. 246.

No limitations of the authority of an insurance agent will be binding on parties with whom he deals which are not brought to their knowledge: *Ins. Co. v. Wilkinson*, 13 Wall. 222.

CAMPBELL, C. J. Barry sued defendant as an insurer for the loss of a steam-yacht which foundered while in tow of a larger steam-boat, on a trip from Muskegon to Waukegan, on the night of November 7, 1884. The defense, in chief, is a denial of any authorized insurance.

The declaration itself involves somewhat the difficulty relied on. It declares on a short certificate, headed with the name of the agency of defendant, certifying that plaintiff is—

"Insured under, and subject to, the conditions of open policy No. 2,273 of the Boston Marine Insurance Company, the sum of five hundred dollars on the steam-yacht 'The Vane', towed behind the steam-barge 'R. G. Ingersoll', from Muskegon, Mich., to Waukegan, Ill. Loss payable to the order of Thomas Barry. This certificate to be surrendered on payment of loss.

" *Muskegon, Mich., Nov. 7, 1884.*
          [Signed] " GEORGE R. LEWIS & Co., Agents."

This certificate having been set out, no further reference is made to any policy, and the remainder is taken up with

recitals of loss and proofs.  Defendant pleaded, and subsequently was allowed to file an affidavit of denial, under which the plaintiff was put to proof.  The evidence tended to show the reception by Lewis & Co. of five dollars premium, the execution by them of the certificate, and the loss of the yacht.

This certificate, standing by itself, has no definite meaning; and as it refers expressly to a certain policy named, it can only be construed under that policy.  As declared on, it means nothing, as it contains no reference to the risks covered, nor to the conditions imposed on both parties, nor to the time of the insurance.  No company could insure in such a vague way, and no agent could be presumed to have any such discretionary authority.  Read with the policy, it makes out such action as was had, and we shall not look at the inferior and accidental questions, which, in our view, become material only in case the main difficulty should disappear.

Lewis & Co. held their authority under a written commission, which gave them no power to issue policies except such as were signed by the president and secretary, and under the rules and regulations of the company, and subject to its instructions.  The record in this case is bare of any proof of broader authority, and it contains nothing to warrant the inference that action by the agent beyond this was ever expressly or tacitly sanctioned.  An agent can only bind a company where he has either real or apparent authority, and in this case there was no apparent authority substantially varying from the real.  *Security Ins. Co. v. Fay*, 22 Mich. 467; *Reynolds v. Continental Ins. Co.*, 36 Id. 131; *Hartford Fire Ins. Co. v. Reynolds*, Id. 502.[1]

In the present case it appeared that the agent had never before undertaken, of his own responsibility, to insure a vessel's hull, but that in all such cases the manager at Chicago looked into the matter, and fixed the rates if approved.

In June, 1884, at the request of a previous owner, Mr.

---

[1] See *Richards v. Insurance Co.*, 60 Mich. 420.

Lewis applied to the manager to learn whether he would in-
sure this same yacht, to be sent from Muskegon to Cheboy-
gan in a few days, and mentioning that she was too small to
be found in Lloyd's.   Nothing was said as to towage.   Mr.
White, the manager, offered to insure the trip risk at 1 per
cent.   The testimony shows—what we must know judicially
—that November risks are greater than those in June.

The agent had no blanks for insuring hulls furnished him
without approval.   He had blank certificates for insuring
cargoes, but they all referred to an open cargo policy, which
was issued in his name, with the usual conditions and terms
of cargo insurance, and required each risk to be indorsed.

The present certificate was on a printed blank for the
insurance of cargo under deck, on board some vessel to be
named in it, and referred to the open policy for the condi-
tions.   The words, "*under deck, on board the*," were erased
by the agent with a pen, and in place of them he inserted
" *the steam-yacht ' The Vane,' towed behind the steam-barge
' R. G. Ingersoll.' "*

This policy is headed "*Inland Open Cargo*," insuring
George R. Lewis & Co., as insured, "on account of whom it
may concern."   It insures—

"All kinds of lawful goods, wares, merchandise, and pro-
duce, laden on board the good vessel or vessels, boat or boats,
railroad or carriage, lost or not lost, at and from ports and
places to ports and places, on a lawful and regular route
and voyage, for the several amounts and at the rates as
hereon indorsed, subject to the conditions of this policy,"
etc.

The risk was to attach immediately on the loading,—

"And so shall continue and endure until the same shall
arrive and be safely landed at the port of destination," etc.

The risks and conditions are not those which are usual and
requisite in vessel insurance, but refer throughout to the car-
riage of goods.   The risk is limited to cargo under deck,
unless otherwise specifically provided, and deck cargoes,
when insured, are made subject to important differences.
Cargoes under or on deck are the only articles provided for.

There is no rule of construction that could include a yacht in tow under the description of cargo, and, if insured at all, it must have been without any limitations. No agent can be presumed to have authority to make such insurance, if he should attempt it. But this certificate undertakes to bring under the policy something entirely foreign to its provisions, and cannot be sustained. If made by a person having unlimited authority, it is possible that an insurance might be made to attach on some terms to save the contract. But this was wholly unauthorized, and the plaintiff, who was bound to look at the policy which it embodied by reference, was thereby notified of its worthlessness.

The general agent knew nothing of the attempt to insure until he also learned the loss. We find nothing to show waiver or approval.

The declaration, as already suggested, makes out no cause of action, for it does not define what sort of insurance was given, whether fire or marine, nor on what terms or conditions. It might have been amended if there was any ground for it, but as no cause of action was made out, and no amendment could aid it, we see no reason for awarding a new trial.

The judgment must be reversed, with costs of both courts.

The other Justices concurred.