JOHN VERDINE v. FRANCIS E. OLNEY ET AL. (ORIGINAL BILL), AND FRANCIS E. OLNEY v. ABRAM A. POST ET AL. (SUPPLEMENTAL BILL).

*Mortgage—Identity of mortgagee—Authority of agent—Equity practice—Bond—Construction of terms of payment.*

1. Where a bond is conditioned for the payment of a sum of money "in five years" from date, the natural acceptation is that it *may* be paid *inside* of the five years, and *must* be paid at the expiration thereof, but this will not warrant payment in installments without the consent of the obligee.

2. In this case it is *held* that if a father, who bore the same christian name as his son, was the real owner of a mortgage taken by the son in the *common* name, without any distinguishing affix thereto, the conduct of the son in reference to this and all other loans made, and securities taken, and the consent and acquiescence of the father in such conduct, were sufficient to authorize a subsequent purchaser of the mortgaged premises to treat the son as the owner of the mortgage, and to deal with him and his agent on the supposition of such ownership, it appearing that the son managed all loans for his father, and that the mortgagor, and the said subsequent purchaser, supposed that the son was the owner of the mortgage in question.

3. Where, in *such* a case, the subsequent purchaser filed a bill to enjoin a statutory foreclosure of said mortgage, and interpleaded his grantor, alleging payment in full of the mortgage debt to

the son and his said agent, and an answer was filed in the name of the mortgagee, in which the agency was denied, and the grantor also answered admitting such agency, and claiming that such payments had been made as charged in the bill, and further answered claiming the benefits of a cross-bill, under the rules, and set up affirmatively such agency and payments, and his rights in the land, and, upon the hearing of the case, the son testified that his father was the owner of the mortgage, and that he had died since the filing of said bill, whereupon the suit was revived on the petition of the complainant against the father's personal representatives, who filed an answer, previous to which there was nothing in the proceedings to indicate whether the father or son owned the mortgage, after which the said grantor filed a supplemental bill in the nature of a bill of revivor against the son, and said administrators, and said subsequent purchaser, alleging that the son had always held himself out as the owner of the mortgage until said hearing, to whom and his agent the payments aforesaid had been made in reliance upon such ownership, the bill in other respects making the same case as was made in the answer of said grantor, to which supplemental bill the administrators filed a plea setting up the first suit by the subsequent purchaser as a bar to the new suit by said grantor, coupled with a disclaimer on the part of the son, said plea and disclaimer are properly overruled, the right to file said supplemental bill under the circumstances being undoubted. And it is further *held* that said subsequent purchaser had a right, under the circumstances, to deal with said agent in the relation in which the son held him out to the public, to wit: as a general agent, authorized to receive principal and interest at any time upon the mortgage.

Appeal from Barry. (Hooker, J.) Argued October 11 and 15, 1889. Decided November 1, 1889

Bills for an accounting, and to discharge a mortgage claimed to have been paid. Defendants Post appeal from a decree granting the relief prayed for. Decree affirmed. The facts are stated in the opinion.

*C. G. Holbrook,* for complainant Verdine.

*Stuart, Knappen & Van Arman, (Austin Blair,* of counsel), for Francis E. Olney.

*Grove H. Wolcott* and *Mark S. Wolcott,* for defendants Post.

MORSE, J.    This controversy concerns the payment and discharge of a real-estate mortgage.

June 1, 1877, Jared C. Thompson, then the owner of the east half of north-west quarter of section 23, in the township of Barry, Barry county, in this State, loaned $800 of Abram A. Post, of Penn Yan, New York, securing the same with a bond and mortgage, which were dated of that date, but the mortgage was not acknowledged until June 15, 1877.    There were two Abram A. Posts living at this time, father and son, who are known in the record as Abram A. Post, Sr., and Abram A. Post, Jr.    Some time in 1878 Jared Thompson sold the land to John Thompson.    February 27, 1879, John Thompson conveyed the same premises to Francis E. Olney, who deeded to John Verdine on December 13, 1882.

In the month of January, 1886, Abram A. Post, claiming to be the owner of the mortgage, commenced a statutory foreclosure of the same in Barry county, and stated in the notice of sale that there was due on the mortgage January 21, 1886, the sum of $836.81.

February 17, 1886, Verdine, the complainant in the first cause, filed his bill of complaint in the circuit court for the county of Barry, in chancery, to restrain the proceedings to foreclose such mortgage, averring that one Anderson, residing in the city of Jackson, Michigan, was the agent of said Post in Michigan, and authorized to make loans for him, and to collect and receive moneys due and payable upon the mortgages and other securities taken to secure said loans, and that Olney, of whom Verdine purchased the premises, claimed to have paid the mortgage on this land in full.    Verdine therefore prayed

that an account might be taken as to the money actually due upon the mortgage, if any, to said Abram A. Post, and, if any was found due, that he might be permitted to redeem the land, and apply the amount of such redemption money upon a purchase-money mortgage held by said Olney against him, and on said premises.

To this bill Abram A. Post answered, denying any authority in Anderson to collect either the interest or principal upon said mortgage, and averring that if Olney or any one else made payments to Anderson, they were not authorized by him, and that there was due the said sum of $836.81, as stated in his notice of sale on statutory foreclosure.

Olney also answered. He averred his purchase of John Thompson, and admitted, on information and belief, that George F. Anderson was authorized to receive the payments made on the mortgage, and claimed that he and Thompson together had fully paid and discharged the mortgage, and that he held the receipts and vouchers therefor. Defendant Olney further answered, claiming the benefits of a cross-bill, under the rules. He set out the conveyance from Jared Thompson and wife to John Thompson, and from the latter to him, both conveyances being subject to the unpaid balance of said mortgage to Post. He alleged, on information and belief, the agency of Anderson, and that he was the duly constituted attorney of Post as to the collection of this mortgage; and that, from the entire period of the giving of said mortgage until after December 20, 1880, the said George F. Anderson, with the consent and acquiescence of Abram A. Post, collected and received, as his agent and attorney, the installments of interest as they matured, also a portion of the principal of said mortgage. He set forth the payments made by himself to Anderson, and further averred the payment to said Post by a New York draft,

duly transmitted to him at Penn Yan, of the sum of $381.47, on June 1, 1882, which was then sufficient to pay and satisfy in full the said mortgage, and all that was due or to become due upon the same, both of principal and interest.

He asked as relief that the court should determine the amount actually paid by him and Thompson; that Anderson was authorized as agent of Post to receive the same; that the payments made to Anderson be applied upon said mortgage, and the same decreed to be fully paid and satisfied, and ordered to be discharged of record.

Issue was joined in the cause, and hearing begun in open court at the February term in 1887, when it became known to the court for the first time that Abram A. Post, Sr., died in the month of June, 1886. An order was afterwards made reviving the suit. Then the administrators of Post filed their answer. Previous to this there was nothing in any of the pleadings to show whether Post, Sr., or Post, Jr., owned the mortgage or commenced the foreclosure; the name "Abram A. Post," without further designation, being used in all the proceedings.

November 14, 1887, Olney filed a supplemental bill, in the nature of a bill of revivor, against Abram A. Post, the son, individually, and the administrators of Abram A. Post, the father. In this bill Olney alleged that Abram A. Post, the son, had held himself out as the owner of the mortgage until the death of his father, and that the payments were made in the full belief that the son, and not the father, was the mortgagee, and that nothing was ever known to the contrary until the partial hearing of the first cause in February, 1887, when the son testified that he was not the owner of the mortgage, and that the same had always belonged to his father, and that his father was dead. The bill, in other respects, made the

same case, in fuller detail, as made in the answer of Olney in the first case.

The defendants Post's administrators filed a plea, setting up the first cause as a bar to the new suit, coupled with a disclaimer on the part of the living Abram A. Post. By stipulation the two causes were heard together. The chief issues in dispute were:

1. Who owned the mortgage, the father or the son?
2. The amount of the payments made to Anderson.
3. Was he authorized to receive them as the agent of Post?

A jury was demanded and ordered, and it was stipulated that the jury should—

"Try the issues contained in both cases together, * * * and that said verdict stand as a verdict in each cause."

Testimony was then taken in open court, in the presence of the court and jury, and submitted by the court in a charge to them, in which they were required to answer three questions as follows:

"1. Which one of the Abram A. Posts was the owner of the mortgage in question at the time of the commencement of the suit first entitled above, to wit, March 22, 1886? A. A. A. Post, Jr.

"2. Was the mortgage mentioned and described in the pleadings in these causes as given by the said Jared C. Thompson to the said Abram A. Post, upon the land described in the pleadings in said causes, fully paid and satisfied previous to the commencement of the suit first above entitled? A. Yes.

"3. What amount, if anything, of principal and interest upon the mortgage in question is actually owing and unpaid at the date of the rendition of this verdict? A. Nothing."

This verdict was rendered November 24, 1888. On the 27th of the same month Judge Hooker made a decree confirming the findings and verdict of the jury, and declared in said decree that the said mortgage was fully

paid, satisfied, and discharged, and gave Olney his costs against the defendants Post, who appeal to this Court. Verdine also, in effect, had his costs decreed from the Posts.

The only material question at issue was the authority of Anderson to receive the payments made upon the mortgage. Enough money was paid to Post and to Anderson to discharge the mortgage beyond all question. Whether Abram A. Post, Sr., or Abram A. Post, Jr., owned the mortgage was not material, except as bearing on the question of Anderson's agency. It is admitted by Abram A. Post, the son, that he managed the loans for his father in Michigan, and that while in Michigan he signed his name as "Abram A. Post." He used the "Jr." only in New York. There can be no doubt upon this record that the Thompsons and Olney supposed that the son was the owner of this mortgage until he testified to the contrary, and that he gave them reason for believing so. The testimony shows that Abram A. Post, Jr., made all the loans in Michigan for his father, came to this State and looked the lands over before making the loans, and attended to the correspondence, signing the name "Abram A. Post." In the present case he saw Thompson and looked over the land before making the loan, and Thompson and every one else supposed that he was the Abram A. Post with whom he was dealing. He conducted all the correspondence, and made all the indorsements upon the mortgage except the last payment, which his father indorsed. While in Michigan he deposited the money he brought with him, and what he received while in this State, in the name of Abram A. Post, and drew the checks upon which it was disbursed, signing them "A. A. Post." If Abram A. Post, the father, was the real owner of this mortgage instead of the son, we think the conduct of the son in Michigan in reference to all loans made

and securities taken here, and the consent and acquiescence of the father in such conduct, were sufficient to authorize the defendant Olney in this case to treat the son as the owner of the mortgage, and to deal with him and his agent, Anderson, on the supposition of such ownership.

Under the circumstances, we have no doubt of the right of the defendant Olney to file the supplemental bill when he learned for the first time that the estate of the father claimed the ownership of the mortgage.

The plea of the administrators and the disclaimer of Abram A. Post were properly overruled. As far as the purposes of this suit are concerned, the son must be considered as the owner of the mortgage, and it may be here remarked that the testimony strongly tends to establish it as the fact. Upon the bond is indorsed the following payments:

"$36.00. Oct. 1, 1887, received on the within bond $36, being interest up to date.

"Interest paid up to June 1, 1878, $36.00.

"Interest paid up to December 1, 1878, $36.00.

"November 1, 1879, received on bond and mortgage $72.00.

"June 3, 1882, received three hundred and eighty-one dollars and fifty cents on the within, $381.50.

"A. A. POST."

The payments established by Olney were as follows:

"December 12, 1878, $36, interest.

"June 25, 1878, $36, interest.

"March 19, 1879, $36, interest.

"Nov. 21, 1879, $433.75 to apply on principal, and $30, interest in full to date of payment.

"August 5, 1880, $18, interest.

"December 20, 1880, $50 on principal."

These payments were all made to George F. Anderson, and were evidenced by his receipts in the possession of Olney, and also shown by other testimony.

Abram A. Post, Jr., testified that Anderson was not

authorized to collect either principal or interest upon this mortgage, but it will be noticed that he indorsed on the bond the interest up to November, 1879, which he must have received through Anderson, as there is no proof that any of it was paid Post, or any person save Anderson. Post finally admitted that some of this interest money was sent to him by Anderson. The fact is established, we think, that Anderson, with the knowledge and consent of Post, collected the interest on this mortgage. Jared Thompson also testifies that Post, Jr., directed him to pay the interest to Anderson when it became due, and Thompson understood from him that he was his agent, and that any business that Thompson might have to transact on account of the mortgage should be done with Anderson. We are satisfied that Anderson had authority to receive the interest, and that all the payments to him on account of interest should be credited upon the bond and mortgage.

Mr. Olney made the payment of March 19, 1879, and all the payments thereafter. After the last payment to Anderson, when Olney wanted to make a payment of interest on the mortgage, Anderson refused to receive any more money, on the ground that he and Post were having trouble, and he was acting as his agent no longer. Up to this time Olney had never seen Post, and had had no correspondence with him. Being desirous of paying his interest, he wrote two or more letters to Post at Penn Yan, but received no reply to any of them. In August, 1881, he met Post and his father. Olney testifies that he spoke to the younger Post about his payments, stating the payments he had made. Post told him he would have to pay twice. Olney replied he "wouldn't pay twice until he had to." The old man said:

"Young man, you will never have any trouble from me,—from us."

This interview was at Jackson, and Olney claims that before Post went away he promised when he returned to Penn Yan to write, directing Olney where to pay his interest. Receiving no letter, he wrote, September 18, 1881, that he wanted to know what his interest was, and wanted to pay it. He afterwards received a letter, dated August 29, 1881, which for some reason had been delayed. This letter was in answer to one written for Olney by Mr. Hall, and stated that he had no agent at Jackson, and closed as follows :

"When you do business, I want you to do it with me. My address is A. A. Post, Penn Yan, Yates Co., N. Y."

The letter was dated and mailed at Jackson. Olney received no answer to the letter of September 18, 1881. He afterwards wrote another letter to Post at Penn Yan, asking for a statement of the amount due on the mortgage, to which he received no reply

June 1, 1882, Mr. Knappen, on behalf of Mr. Olney, procured a New York draft for $381.50, payable to the order of L. E. Knappen, and by him indorsed to the order of A. A. Post, and sent the same in a letter to said Post at Penn Yan. The letter set forth the payments claimed to have been made, and that this draft was forwarded to pay the balance of principal and interest on the bond and mortgage. A discharge drawn ready for execution was also inclosed, with one dollar in currency to pay expenses of such execution. No reply was ever received to this letter, or to another sent July 13, 1882, by Mr. Knappen, inquiring why the remittance was not acknowledged. The draft was received at Penn Yan and indorsed, June 3, 1882, as a payment, in the handwriting of the elder Post. No acknowledgment seems to have been made of the dollar in currency by indorsement or otherwise. Nothing was heard from this draft by

Olney or Knappen, or in reference to the mortgage, until January 2, 1885, when Mr. Knappen received a letter from G. H. & M. S. Wolcott, attorneys at Jackson, stating that the mortgage had been left in their hands for collection.

It is admitted that if the payments of both principal and interest made to Anderson are allowed, the draft sent June 1, 1882, and received by Post, was sufficient in amount to fully pay and discharge this mortgage. But it is vigorously contended by the counsel for the defendants Post that there is not sufficient evidence to show that Anderson had any authority to receive the payments upon the principal, to wit, $433.75, November 21, 1879, and $50, December 20, 1880. It is claimed that the principal, or any part of it, was not due until June 1, 1882; and that there is no testimony that Anderson had any right to receive any of the principal before due, except the letter of Anderson to John Thompson, which cannot be used as evidence to prove his authority as agent. But it appears from the bond and mortgage that the principal was payable "in five years" from their date, and it would seem that although the payment of the principal, or any part of it, could not be enforced until the expiration of the five years, still it was at the option of the mortgagor to pay it at any time within such period. The definition of "in" by Webster is "within; inside of;" and with such meaning the preposition is commonly and generally used. When the bond reads that the $800 is to be paid "in five years," the natural acceptation is that it may be paid inside of the five years, and must be paid at the end thereof. But this would not warrant the payment in installments without Post's consent.

Independently, however, of the question whether the principal, or any part of it, was due before June 1, 1882,

we are satisfied that George F. Anderson was held out to the public in Michigan by Post as his general agent to transact any and all business pertaining to the loans in Michigan, and that Olney was justified in making the payments to him.

The evidence is overwhelming that, for a period from the inception of this mortgage up to 1881, Anderson was the acknowledged agent of Post in his loans, and in the collection and payment of interest and principal upon them; and that Anderson had general authority to transact business as to the bonds and mortgages taken in Michigan, as shown by the statements of Post to a number of persons who had given such securities for loans made by him, and also by two letters written by Post to such persons. As Thompson testified, we think Post gave the parties loaning money from him to understand that Anderson was his agent, and that any business that they might have to transact on account of their mortgages should be done with Anderson. It may be, as between Post and Anderson, that it was understood that Anderson should not receive any of the principal sums of said loans without first obtaining his consent, but that cannot alter the situation. Olney had a right, under the circumstances, to deal with Anderson in the relation that he was held out by Post to the public, to wit, as a general agent, authorized to receive principal and interest at any time upon the mortgage. Anderson, at the time of the taking of the proofs, was absent, and supposed to be in some prison in England, and his testimony was not obtained.

We think the decree was right, and it will be affirmed in both cases, with costs.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred with MORSE, J.

CAMPBELL, J.  I concur in all but the construction of the terms of the bond, on which I reserve my opinion, as payments were so accepted as to make it immaterial.