CLOSSA E. BROWN ET AL., APPELLEES, V. E. L. ENO ET AL.,
APPELLANTS.

FILED MAY 19, 1896.   No. 6595.

1. **Estoppel.** Where one, by his words or conduct, willfully causes
   another to believe in the existence of a certain state of things,
   and induces him to act on that belief, so as to alter his own pre-
   vious position, the former is concluded from averring against the
   latter a different state of things as existing at the same time.
   *Cain v. Boller*, 41 Neb., 721, and cases there cited followed.

2. **Principal and Agent.** The apparent authority of an agent which
   will bind his principal is such authority as an agent appears to
   have, by reason of the actual authority which he has. (*Creighton
   v. Finlayson*, 46 Neb., 457.)

3. **Estoppel: EVIDENCE.** The evidence examined, and *held* to sustain
   the finding of the district court, that the appellants had by their
   conduct estopped themselves from claiming or asserting a mort-
   gage lien upon certain chattel property.

4. **Principal and Agent: EVIDENCE.** Evidence examined, and *held* to
   sustain the finding of the district court, that one of the appellants
   was the agent of the other, and acted within the scope of his au-
   thority in making certain representations set out in the opinion.

APPEAL from the district court of Hall county.  Heard
below before HARRISON, J.

*W. H. Thompson*, for appellants.

*W. L. Hand* and *Abbott & Caldwell*, contra.

RAGAN, C.

In June, 1890, E. L. Eno and W. D. Moulton sold to
William Haynes the furniture and fixtures of the Palmer
House, a hotel in the city of Grand Island.   Haynes, in
part payment of said furniture and fixtures, conveyed to
Eno & Moulton certain real estate, the same being at the
time incumbered by mortgages aggregating the amount
of $6,420.   These mortgages were at the time not due,
but as they matured were to be paid off by Haynes.
Haynes paid the balance of the purchase price of the

furniture and fixtures by executing and delivering to Eno & Moulton his promissory note for $7,500.   He secured this last note by chattel mortgage upon the furniture and fixtures purchased of Eno & Moulton, and also executed and delivered to them another note at the same time for $6,420 and secured the same by a second mortgage upon said furniture and fixtures.   This last note and mortgage were given to Eno & Moulton to secure Haynes' promise and agreement to pay off and discharge the mortgages existing upon the real estate which he had conveyed to them as part payment for the furniture and fixtures purchased.   Clossa E. Brown and Elwood Brown brought this suit in equity in the district court of Hall county against Eno & Moulton, alleging in their petition, in substance, that in October, 1890, they had purchased of Haynes the furniture and fixtures of said Palmer House; that at the time of making said purchase there existed of record in Hall county against the furniture and fixtures purchased, in favor of Eno & Moulton, the two chattel mortgages above mentioned of $7,500 and $6,420, respectively; that part of the debt secured by these mortgages was at that time past due; that they had no knowledge as to how much of said mortgage debts, if any, had been paid; that they applied to Eno & Moulton for information as to how much of said debts secured by mortgages on said property remained unpaid, and that Eno & Moulton informed them that the total amount remaining unpaid on said mortgages did not exceed the sum of $10,000; that they believed in and relied upon this statement and purchased the furniture and fixtures from Haynes at a price exceeding $20,000; all of which consideration, except the sum of $10,000, they paid directly to Haynes; and that they paid said $10,000 to Haynes as follows: On the day they purchased the furniture and fixtures of Haynes they made a cash payment of $2,000, which, by an agreement between Haynes and Eno & Moulton, they, the Browns, paid directly to Eno & Moulton instead of to Haynes; and on the date of said purchase

they, the said Browns, executed to the said Haynes their notes aggregating $8,000, due at certain stated times, and by agreement between Haynes, Eno & Moulton, and the Browns, these notes, instead of being delivered to Haynes, were deposited in a bank in Grand Island, and as fast as they matured and were paid by the Browns the proceeds were to be paid over to Eno & Moulton in discharge of the balance due them on their debts secured by mortgages on the furniture and fixtures; that they, the Browns, paid the said $8,000 of notes as they matured and the same were paid over to Eno & Moulton as agreed; that but for the representations of Eno & Moulton that the total amount of their liens against the property and fixtures did not exceed the sum of $10,000, they, the Browns, would not have paid over to Haynes as much of the purchase price of the furniture and fixtures as they did; that they would have retained control of sufficient amount of the purchase price to have discharged the liens of Eno & Moulton against the property purchased; that Eno & Moulton, claiming that there was a balance of about $800 due to them from Haynes, which was secured by the chattel mortgages on the furniture and fixtures, had seized said furniture and fixtures under said mortgages, and were proceeding to advertise and sell them in pursuance of the statute to make and raise the sum claimed to be due them from Haynes. The prayer of the petition was for an injunction perpetually restraining Eno & Moulton from foreclosing their chattel mortgage against the furniture and fixtures. The court found the issues in favor of the Browns and rendered a decree as prayed, and Eno & Moulton have appealed.

1. The first argument relied on here for the reversal of this decree is that the finding of the district court is not sustained by sufficient evidence. The evidence on behalf of the appellees tends very strongly to support all the allegations of their petition. It tends to show that in June, 1890, they purchased the furniture and fixtures of the Palmer House from Haynes; that the purchase price

was something over $20,000; that they examined the records of Hall county and found there two mortgages existing against the furniture and fixtures which they were about to purchase, in favor of Eno & Moulton; these mortgages secured two debts, one for $7,500 and the other for $6,420; that thereupon they informed Mr. Moulton that they were negotiating for .the purchase of the furniture and fixtures of the Palmer House from Haynes, and inquired of him what amount of the debts owing to Eno & Moulton by Haynes, and secured by mortgages on the furniture and fixtures, remained unpaid; that he informed them that the total amount remaining unpaid on said debts secured by said mortgages did not exceed $10,000; that the trade was then consummated with Haynes; the entire purchase price, except $10,000, paid over to Haynes; that by agreement between Moulton, the Browns, and Haynes the remaining $10,000 due Haynes on the purchase made by the Browns was paid to Eno & Moulton as follows: Two thousand dollars cash. was paid to them and credited on the note held by them against Haynes. The Browns executed and delivered to Haynes their notes for various sums of money, but aggregating $8,000, and due at stated times in the future, and by an agreement between Haynes and Moulton and the Browns these notes were deposited in a bank in Grand Island and were to be paid there by the Browns as they matured, and the bank was to apply the proceeds of those notes to the discharge of the balance of the debt owing by Haynes to Eno & Moulton, and which debt was secured by the mortgages on the furniture and fixtures as already stated. At the time of this agreement Moulton extended the time of the payment of the debt due to him and Eno from Haynes so as to make it mature at the same time which the notes that the Browns had given to Haynes would mature; and that they, the Browns, relied upon the representations made by Moulton as to the amount due him and Eno on their mortgages against Haynes and acted upon such representations; that they

possessed no knowledge or information as to how much remained due to Eno & Moulton on their mortgages against Haynes, and that had they known that Eno & Moulton claimed more than $10,000 on said mortgages they would have retained out of what they agreed to pay Haynes for the furniture and fixtures a sum sufficient to have discharged the liens of Eno & Moulton against the property, as by the terms of the sale between the Browns and Haynes the latter was to furnish them a clear title to the furniture and fixtures. The testimony on behalf of Eno & Moulton tended to show that they made no representations to the Browns as to what was due them from Haynes. The evidence on which the district court acted was conflicting. It was not of the clearest or most satisfactory character, but it is sufficient to sustain its finding that Eno & Moulton represented to the Browns before they purchased the furniture and fixtures of Haynes that the amount of their claims against the furniture did not exceed $10,000; that the Browns, having no knowledge of the fact, relied upon this statement, purchased the furniture and fixtures, and paid all consideration therefor except $10,000 to Haynes. The case of the appellees is an invocation of the well-known doctrine of equitable estoppel. In *Grant v. Cropsey*, 8 Neb., 205, is a statement of the doctrine, as follows: "When one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." (See, also, *Newman v. Mueller*, 16 Neb., 523; *Blodgett v. McMurtry*, 34 Neb., 782; *Cain v. Boller*, 41 Neb., 721; *Viergutz v. Aultman*, 46 Neb., 141.)

2. All the representations which the appellees allege were made to them by Eno & Moulton were made by Moulton. The Browns had no conversation or dealings with Eno prior to the time they purchased the furniture

and fixtures in controversy from Haynes, and it is now insisted that the representations made by Moulton to the Browns were not binding upon Eno, and that the decree, as against him at least, must be reversed. The district court has found in effect that Moulton in all that he said and did was acting as the agent of Eno, and that the representations that he made to Brown were representations made within the scope of his authority as Eno's agent. The point is a very close one, but we think the district court was justified in finding and inferring from the evidence that the notes and mortgages of Moulton & Eno were their joint property; that Moulton & Eno were the joint payees of said notes and mortgages; that these notes and mortgages were in the possession or under the control and subject to the direction of Moulton, acting for himself and for Eno; and that Moulton in making the representation he did, as to the amount due on said notes and mortgages, did not transcend the scope of his authority as Eno's agent. "The apparent authority of an agent which will bind his principal is such authority as an agent appears to have by reason of the actual authority which he has." (*Creighton v. Finlayson*, 46 Neb., 457, and cases there cited.) It appears from the evidence that the notes and mortgages belonging to Moulton & Eno were in Moulton's possession, or under his control and subject to his direction; that he had authority to collect these notes and mortgages and to extend the time of their payment until the maturity of the notes given by the Browns to Haynes, so that those notes when paid should pay the notes of Moulton & Eno. This being Moulton's actual authority, we cannot say that the conclusion of the district court, that Moulton was acting within the scope of his authority when he made the representation to the Browns as to the amount unpaid on the Moulton & Eno debt, is unsupported by the evidence. The decree is .

                                          AFFIRMED.

HARRISON, J., not sitting.