MARX *v.* KING.

1. EVIDENCE—CONTRACTS—PAROL EVIDENCE RULE—SUBSEQUENT
   MODIFICATION.
   While parol contemporaneous evidence is inadmissible to vary
   the terms of a written contract, subsequent oral negotiations
   modifying its terms are admissible in evidence.

2. PRINCIPAL AND AGENT—HOLDING OUT—ESTOPPEL.
   Advice by the principal to a purchaser of goods from a sales-
   man, who had been making prices to the purchaser below the
   usual invoice rates, that any prices or arrangements made by
   the salesman would be satisfactory to the principal, binds
   the latter and estops him to claim that the prices thereafter
   made were unauthorized.

3. SAME—AUTHORITY OF AGENT.
   Persons dealing with an agent may rely on his apparent
   authority.

4. SAME—SCOPE OF AUTHORITY.
   The apparent power of the agent is to be determined by the
   acts of the principal and not by the acts of the agent.

5. SAME—EVIDENCE.
   It is incompetent, for the purpose of showing apparent author-
   ity of an agent or as characterizing his employment, to intro-
   duce evidence of acts not authorized or known to the princi-
   pal or to the one with whom he dealt.

6. EVIDENCE—ADMISSIONS.
   Testimony tending to contradict plaintiffs' testimony and
   showing admissions made by them is admissible.

Error to Washtenaw; Kinne, J. Submitted June 8,
1910. (Docket No. 28.) Decided July 14, 1910.

Assumpsit by Jacob L. Marx and Eugene H. Kopple,
copartners as B. Marx & Son, against Johanna King,
executor of the last will and testament of Joseph King,
deceased, for goods sold and delivered. A judgment for

plaintiffs for an insufficient amount is reviewed by them on writ of error.   Reversed.

*Bernard B. Selling*, for appellants.

*John P. Kirk* (*M. J. Cavanaugh*, of counsel), for appellee.

STONE, J.   The plaintiffs bring this case to this court on a writ of error from the circuit court, where a jury rendered a verdict in favor of the plaintiffs in the sum of $161.95, an amount conceded by defendant to be due. The plaintiffs' claim, which was disallowed by the jury, was about $4,500.   Plaintiffs are jobbers and wholesale dealers in shoes, leather findings, and shoe store supplies, and have been so engaged for many years, having their place of business in the city of Detroit.   Defendant, Joseph King, who died a few days after the judgment in this case was rendered in the lower court, and against whose executrix this suit has been properly revived, was engaged in the shoe business at Ypsilanti, Mich., and had been so engaged for many years.   Jacob L. Marx, one of the plaintiffs, had known Joseph King for many years, and had business dealings with him off and on for 15 years, or possibly longer.   The plaintiff Marx for a long time, but after him Mr. Kopple, one of the plaintiffs now, then a traveling salesman, and finally Sidney Berger, another of plaintiffs' traveling salesmen, had taken orders from said King for goods.   The plaintiffs claim that Berger, the traveling salesman, simply took orders, and had no right to make any contracts.

It is the claim of the plaintiffs that prior to July, 1906, Mr. King had always paid his bills by checks sent direct to the house, and that after July, 1906, Mr. King, with one or two exceptions, never sent any checks direct to the house.   Money that was received at the office of the plain-tiffs on his account was received through the said Berger. One Clarence C. French was a bookkeeper for plaintiffs during the year 1906, and down to the latter part of 1907.

It was conceded by Mr. King that from January 4, 1906, to August 31, 1907, plaintiffs had shipped to him, and he had received, goods invoiced at the sum of $16,260.30. The books of the plaintiffs, as they appeared at the time of the discovery by the plaintiffs of the transactions claimed by them to be fraudulent between Berger and the defendant, King, showed credits during the same period of $12,305.22; but the plaintiffs claim that, after the discovery of the fraud, it appears that the bookkeeper French changed the entries in the ledger to correspond with those appearing in the cashbook and journal, whereby the amount of credits was reduced $700. In other words, it is claimed Mr. King had been credited on the ledger by French, the bookkeeper, with $700 more than the cashbook and journal showed, so that the balance, according to the original entries on the books of the plaintiffs (cashbook and journal), showed a balance still due from King to plaintiffs in the sum of $4,592.08, on September 1, 1907.

The defendant, King, both in his pleadings and evidence, admitted that he had not paid the full invoice prices for the goods, but through transactions had with Berger, plaintiffs' traveling salesman, had deducted large amounts for discounts and allowances other than those appearing on the invoices sent by the plaintiffs to the defendant; and the said King claimed the amount of the discounts and allowances added to the amount actually paid to Berger totaled the full amount of the invoice prices of the goods, with the exception of said sum of $161.95, which the defendant paid into court and admitted to be due the plaintiffs, and which was the amount allowed by the jury.

The method of doing business between the plaintiffs and the defendant, King, was as follows: The traveling salesman, Berger, would go to the store of King, at Ypsilanti, and take orders for goods. These orders, when so taken, would be sent to the plaintiffs, who would ship the goods to the defendant, King, at the same time sending him an invoice for the same at the prices stated in the

orders, which had in all cases either one of two rubber stamps impressed thereon:

"Terms, strictly net 30 days and 2 per cent. discount in 10 days, subject to draft when due," or "Positively no discount allowed other than specified on bill."

It appears that each and every invoice sent by the plaintiffs to the defendant for merchandise contained one or the other of these rubber stamp markings thereon.

Plaintiffs concede that Berger had authority to collect, and that the defendant is entitled to be credited with all the money that he actually paid Berger, whether Berger turned it over to the plaintiffs or not.

The declaration contains a special count setting up a conspiracy between King, Berger, and French to defraud the plaintiffs, and sets forth the invoice prices of the goods shipped to King, the credits as they appear upon the books of the plaintiffs, and the alleged fact that it was discovered that some of the credits in the ledger were fictitious and raised from the amounts actually shown by the cashbook. The declaration also contained the common counts, including a count for goods sold and delivered, and a bill of particulars was filed setting forth the amount of the goods sold and delivered.

Both of the plaintiffs testified in the case, and both claimed that neither had any knowledge nor notice at any time that Berger was assuming to give King any discounts or allowances other than those named in the invoices until August, 1907, when it is claimed the fraud was discovered and that Berger made a complete confession, in which it appeared that Berger and French, acting in conjunction, embezzled moneys collected, and gave unauthorized discounts to increase Berger's sales.

Upon the trial, the defendant, King, seemed to rely upon the following defenses: (1) He claimed that he instructed his clerk, one Minnis, in July or August, 1906, to call up the plaintiffs, and Minnis claims that he got plaintiff Marx on the telephone and asked him why the

invoices came billed higher than the prices that Mr. Berger made to Mr. King, and that Mr. Marx stated that Mr. Berger and Mr. King had an understanding, and to settle with Mr. Berger, and that it would be all right. Evidence to this effect was taken under objection and exception on the part of the plaintiffs, and Mr. Marx denied any such conversation or arrangement. (2) That Berger had given discounts to other customers of the plaintiffs which, although a fact, was shown not to have been with the knowledge of plaintiffs or Mr. King. This evidence was received under objection and exception, and will be referred to more specifically hereafter.

There were many exceptions taken by the plaintiffs upon the trial. There was a motion for a new trial, which, having been denied, exceptions were duly taken, and there are 83 assignments of error in the record. We shall not discuss all of them. They may be discussed under three headings:

(1) The admissibility of certain testimony showing the dealings of the plaintiffs through Mr. Berger, their agent, with defendant King and other customers.
(2) The argument of counsel to the jury.
(3) The refusal of the court to grant certain requests in the charge to the jury.

1. Assignment of error 56*a* involves the question as to whether it was competent to receive the evidence of the witness Minnis as to the telephone communication, which he claims he had with the plaintiff Marx, relating to the right of the said Berger to allow discounts and allowances to the defendant. The plaintiffs presented a request to charge, reading as follows:

"The plaintiffs in this case have proved the sale and delivery of merchandise of the invoice value of $16,197.30 from January 1, 1906, to August 31, 1907. I charge you that there is no evidence in this case from which you have the right to infer that Sidney Berger, plaintiffs' agent for soliciting orders, had any authority to give any discounts or allowances to defendant other than those stated upon the invoices."

This request was refused, and the following language occurs in the charge of the court:

"In this case, however, the defendant insists that in all of his large dealings with the plaintiffs they have always made him discounts and allowances; that he had a distinct understanding with Mr. Marx, the leading member of this firm of the plaintiffs, that he should have these discounts and allowances; that he refused to trade with him except upon those terms; that it was so understood by the plaintiffs; and that the plaintiffs distinctly explained and waived the conditions stated in their invoices; and that in July or August, 1906, when Mr. King raised this question over the phone through Mr. Minnis, that Mr. Marx replied that Mr. Berger and Mr. King had an understanding about the question of discounts and allowances, and that whatever settlements were made by them would be all right. Now, gentlemen of the jury, if you find from the evidence that these contentions on the part of the defendant are sustained and established, then the plaintiffs are bound by such understanding, and the defendant is entitled to your verdict, except as to the amount conceded."

The plaintiffs insist that it was error to receive evidence of this nature, and that the court erred in refusing to give plaintiffs' requests in charging the jury as above. It is claimed by plaintiffs that this was permitting parol evidence to alter, or vary, or abrogate, a written contract. It will be borne in mind that this claimed conversation arose at a time when defendant King's attention was called to the fact that goods were shipped to him with invoice prices larger than those agreed upon with Berger. There is no legal objection to the receiving of parol evidence of subsequent agreement to vary, and even to abrogate, a written contract, if it were conceded that this was such contract. The rule which it is sought to apply is the well-known rule that contemporaneous parol evidence will not be received to alter or vary the terms of a valid written instrument. The distinction is plainly pointed out in the case of *Cohen* v. *Jackoboice*, 101 Mich. 409 (59 N. W. 665), cited by counsel for plaintiffs. The true rule is laid down in 17 Cyc., at page 734.

In support of the rule that a subsequent parol agreement may abrogate or modify the contract, we need only refer to two or three of our own cases. *Town* v. *Jepson,* 133 Mich. 673 (95 N. W. 742). In *Mouat* v. *Bamlet,* 123 Mich. 345 (82 N. W. 74), where the parties had acted under a parol agreement which had been substituted for one in writing, and had made settlements thereunder, they were held estopped to claim under the old contract; and that the old contract had been waived. *Wolff* v. *Alpena National Bank,* 131 Mich. 634 (92 N. W. 287).

In our opinion, the question of the altering of a valid written instrument by parol, is not here involved; and we think it very clear that if the plaintiffs, pending the dealings between the parties, when their attention was called to the fact that Berger was making prices to the defendant which were below the invoice prices, stated to the agent of the defendant, intending that it should be communicated to him, that any prices or arrangements made by Mr. Berger would be satisfactory to them, and would be all right, and that the dealings continued, the defendant relying upon such statement in all the subsequent settlements that were made with Berger, the plaintiffs are estopped to claim that no such arrangement was made, or that it was not binding. When the plaintiffs referred the defendant to Mr. Berger as the person who had authority to fix prices and settle accounts, they held him out to the defendant as clothed with authority in that respect. This court has repeatedly held that if one party refers another to a third person for information, as authorized to act or answer for him, he will be bound by the actions and statements of the person so referred to. *Reeves* v. *Kelley,* 30 Mich. 132; *Beebe* v. *Knapp,* 28 Mich. 53; *Beebe* v. *Young,* 14 Mich. 136; *Rosenbury* v. *Angell,* 6 Mich. 508. We find no error in this action of the court.

2. This brings us to the other main claim of error urged by the plaintiffs upon the trial of the case. It appears that the court permitted the defendant to show that Berger had dealt in a similar manner with divers other par-

ties, in that he had allowed discounts and allowances to them differing from the invoices, and that this had been done without the knowledge of either of the plaintiffs, or of the defendant, King.    This may be said of the testimony of the witnesses Leo Gruner, Fred Tagg, A. Levy, John Wahr, and John Lambert.    This question was raised by objection and exception to the testimony, by motion to strike out the testimony, and by request to charge, and the question is presented by the 81st assignment of error.

Plaintiffs' 22d request to charge was as follows:

"There is evidence in this case that Berger gave discounts and allowances to dealers other than the defendant; the evidence further shows that plaintiffs had no knowledge nor any information on the subject, nor did defendant, King.    I charge you therefore that the giving by Berger of discounts or allowances to others under these circumstances may not be considered by you as a holding out by plaintiffs of said Berger as having any authority to grant discounts or allowances to King, nor as a circumstance from which King had a right to infer or believe that Berger had such authority."

This request was refused, and the court charged the jury in the following language:

"The evidence as to the dealings of Berger with others was admitted in evidence as tending to show his apparent authority, and to characterize his agency, and as affecting the probable knowledge of the plaintiffs as to the conduct of their agent.    If, in point of fact, Mr. Berger had no such authority, and the plaintiffs were ignorant of the conduct of Mr. Berger, inasmuch as the defendant had no knowledge of those transactions, it would in itself be no justification or protection to him, and his defense would fail, unless the defendant himself had express authority from Mr. Marx himself to settle with Mr. Berger according to their understanding."

The last portion of the above charge attempts to qualify the former portion, but it is the claim of the plaintiffs that the admission of the evidence was error, and that the whole subject should have been taken from the consideration of the jury, and that it was error to submit the question at all to the jury.

The doctrine is clearly stated in 31 Cyc. p. 1331, *et seq.*, as follows:

"While as between the principal and the agent the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof; and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority so far as third persons are concerned is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent *to* the third person who, in order to avail himself of the rights thereunder, must have dealt with the agent in reliance thereon in good faith, and in the exercise of reasonable prudence, in which case the principal will be bound by acts of the agent performed in the usual and customary mode of doing such business, although he may have acted in violation of private instructions, for such acts are within the apparent scope of his authority."

In 1 Am. & Eng. Enc. Law (2d Ed.), pp. 989, 990, the author, after discussing the authority which an agent has been given by his principal, proceeds as follows:

"Beyond that, he is bound by the acts of the agent within the apparent authority which the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. For the acts of his agent within his express authority the principal is liable, because the act of the agent is the act of the principal. For the acts of the agent within the scope of the authority which he holds the agent out as having, or knowingly permits him to assume, the principal is made responsible, because to permit him to dispute the authority of the agent in such case would be to enable him to commit a fraud upon innocent persons."

In Mechem on Agency (Ed. of 1889), § 84, that author says:

" It may therefore be stated as a general rule that whenever a person has held out another as his agent, authorized to act for him in a given capacity; or has knowingly or without dissent permitted such other to act as his agent in such capacity; or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent, authorized to act in that capacity; whether it be in a single transaction or in a series of transactions, his authority to such other to act for him in that capacity will be conclusively presumed, so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith, and in the exercise of reasonable prudence, and he will not be permitted to deny that such other was his agent, authorized to do the act that he assumed to do, provided that such act is within the real or apparent scope of the presumed authority."

It would seem that we need not go outside of the decisions of this court upon this question. They have been so numerous, and have arisen under so many different circumstances, that they seem to cover the entire field. *Jewett* v. *Bryant*, 159 Mich. 345 (123 N. W. 1097); *Davis* v. *Kneale*, 97 Mich. 72 (56 N. W. 220); *Wierman* v. *Sugar Co.*, 142 Mich. 422 (106 N. W. 75).

In the last-named case Justice GRANT said:

"The apparent power of the agent is to be determined by the acts of the principal, and not by the acts of the agent. * * * No act of the principal in this case appears upon the record to show that it clothed its agent with authority to pledge its liability to pay the debts of third persons. The evidence here is one of original authority. There is no evidence of ratification."

See, also, *Heffron* v. *Armsby*, 61 Mich. 505 (28 N. W. 672); *Barry* v. *Insurance Co.*, 62 Mich. 424 (29 N. W. 31); *Verdine* v. *Olney*, 77 Mich. 310 (43 N. W. 975); *Leo Austrian & Co.* v. *Springer*, 94 Mich. 343 (54 N. W. 50, 34 Am. St. Rep. 350); *Hirschmann* v. *Railroad Co.*, 97 Mich. 397 (56 N. W. 842).

In *Clark* v. *Dillman*, 108 Mich. 627 (66 N. W. 570), Justice HOOKER said:

"It is undoubtedly the law that a person may be bound by the representations and acts of another, as agent, where there has been such a holding out as to reasonably lead one dealing with him to believe in the existence of such agency. But all of the elements of an estoppel must be present. There must be conduct calculated to mislead, and it must be under circumstances which justified the claim that the alleged principal should have expected that the representations would be relied and acted upon; and further, it must appear that they were relied and acted upon, in good faith, to the injury of the innocent party."

In all of these cases the action of the agent had been brought home to the principal, and recognized and ratified; and it appeared that the other party had relied upon the apparent authority, and had acted in good faith. Many authorities in other States may be cited. *Gallinger* v. *Traffic Co.*, 67 Wis. 529 (30 N. W. 790); *Law* v. *Stokes*, 32 N. J. Law, 249 (90 Am. Dec. 655); *Edwards* v *Dooley*, 120 N. Y. 540 (24 N. E. 827); *Olcott* v. *Railroad Co.*, 27 N. Y. 558 (84 Am. Dec. 298); *Beattie* v. *Railroad Co.*, 90 N. Y. 643; *Creighton* v. *Finlayson*, 46 Neb. 457 (64 N. W. 1103); *Brown* v. *Eno*, 48 Neb. 538 (67 N. W. 434).

In the light of these authorities we feel compelled to hold that the court erred in receiving this testimony and allowing it to go to the jury. Especially is this true with reference to the testimony of the witnesses Gruner, Tagg, and Levy. The testimony of John Wahr and John Lambert, in so far as it contradicted the testimony of plaintiffs and showed admissions made by them, was admissible for that purpose, and should have been so submitted to the jury. But we are constrained to say that neither for the purpose of showing apparent authority, nor as characterizing the employment, was it proper to submit this evidence to the jury, and in our judgment it was reversible error to do so.

3. We have read this record carefully and find no other

error worthy of consideration. The main charge of the court finds support in our own decisions; and in *Leo Austrian & Co.* v. *Springer, supra*, many of the principles are discussed which are embodied in the charge. We find nothing in the conduct of counsel in the argument of the case that is worthy of consideration, but we feel compelled to reverse the case upon the error pointed out.

Judgment reversed, and new trial ordered.

BIRD, C. J., and MCALVAY, BROOKE, and BLAIR, JJ., concurred.