## OHIO BOULEVARD LAND CORPORATION v. GREGGORY.

### No. 5590.

Circuit Court of Appeals, Sixth Circuit.

Jan. 12, 1931.

William Friedman, of Detroit, Mich. (Friedman, Meyers & Keys, of Detroit, Mich., on the brief), for appellant.

Harry C. Milligan, of Detroit, Mich., for appellee.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

HICKS, Circuit Judge.

Suit for breach of contract. Judgment for plaintiff. Defendant appealed.

Appellant, a corporation, erected and operated a residential hotel in Detroit called the Wilshire. Berman was president of the corporation. In October, 1926, he entered into negotiations with appellee looking to the employment of appellee as manager of the building. These negotiations continued until about the 1st of December, when, according to appellee, an agreement was reached which at the direction of Berman was embodied in writing by an attorney employed by appellee. Berman admits that he employed appellee, but denies that he made any such agreement as is set forth in the writing (Exhibit 1) or that he instructed appellee to have such an agreement drawn. He insists that he declined to execute a written contract until appellee had proven efficient. Two copies of Exhibit 1 were made, one of which, unsigned, was retained by appellee, and the other, also unsigned, was delivered by him to Berman some time in January, 1927. Berman retained this copy, but never signed it. About February 1, 1927, Berman left Detroit upon a trip to California. There is evidence tending to show that, before leaving, Berman, in the presence of Abe Silverstein, told appellee that he was leaving Silverstein in charge of the building; that appellee was to take orders from Silverstein, and that Silverstein could sign the contract; that what Silverstein said was all right. Silverstein was neither an officer, director, nor stockholder of appellant. He was a stockholder in the Lerner Construction Company, the contracting concern that erected the Wilshire and that also owned about half of the stock of appellant corporation. He seems to have had active charge for the Lerner Company of the construction of the building but did not complete it until about March 1st. He also superintended the installation of furniture as the several apartments were finished. Both appellee and Silverstein signed appellee's copy of the contract some time in February, and appellee began service on March 1st. He could not begin earlier because of the unfinished condition of the building. He was discharged by Berman in April. The opening and closing paragraphs of the contract are set out in the margin.[1] This agreement

---

[1] "Memorandum of agreement executed this —— day of January, A. D. 1927, by and between Joseph M. Greggory of the City of Detroit, County of Wayne, and State of Michigan, hereinafter called the party of the first part, and the Ohio Boulevard Land Corporation, a Michigan corporation, hereinafter called party of the second part. * * *

"In witness whereof, the first party has hereunto set his hand and seal and second party has caused the same to be executed by its duly authorized officer and its corporate seal to be affixed hereto, the day and year first above written.

"[Signed] J. M. Greggory,
"Ohio Boulevard Land Corporation
"[Signed] By—Abe Silverstein.
"Witnesses:
"[Signed] A. L. Schuffert
"F. Sage."

covered a period of one year from January 15, 1927. Appellee was given full and complete supervision of the hotel, was to be responsible for its operation, and was to employ all necessary help. The consideration for his services was $5,000 and living quarters for himself, wife and daughter, including laundry, mail, telephone service, and meals.

The record establishes beyond doubt that liability was sought to be based solely upon this instrument signed by Silverstein. This was the theory upon which the case was tried. There was no attempt to base the action upon any oral agreement with Berman or to regard the writing as a formal memorial of any oral understanding. We review here the two chief complaints, to wit:

(1) The denial of a directed verdict.

(2) That the court erred in charging the jury as follows: "I charge you under the law that the president of the Ohio Boulevard Land Corporation would have the authority to authorize an agent to execute a contract of this character. That authority could be oral. It would not be required to be in writing."

[1, 2] Considering these assignments in their inverse order, we think the instruction complained of was erroneous. The authority of the president to authorize Silverstein to execute the contract is not to be determined as a matter of law. His express authority was a question of fact. His implied authority was at least a mixed question of law and fact. But our concern is not limited to Berman's actual authority. The case presents another problem, i. e., Berman's apparent authority, and we think that, if the court considered the case as one for the jury, it should have defined the meaning of the term "apparent scope of an agent's authority," and then left it to the jury to determine whether as a fact the delegation of authority by Berman to Silverstein fell within the definition.

The motion for a directed verdict presents the question whether all the evidence construed most favorably to appellee raises any liability. We do not think it does. It must be kept in mind that the contract is sued on as the agreement of the corporation, not of Berman or of Silverstein, and the burden was upon appellee to establish that proposition. It is settled that, " * * * where a party deals with a corporation in good faith—the transaction is not ultra vires,— and he is uninformed of any defect of authority or other irregularity on the part of those acting for the corporation, *and there is nothing to excite suspicion of such defect or irregularity*, the corporation is bound by the contract, although such defect or irregularity in fact exists." (Italics ours.) Merchants' Bank v. State Bank, 10 Wall. 604, 644, 19 L. Ed. 1008; Swift & Co. v. Detroit Rock Salt Co., 233 F. 231, 234 (C. C. A. 6).

We review certain undisputed facts in the light of the law just stated: The corporation had made Berman its president. His given authority is not shown, but, in connection with his office, he acted as general manager of the apartment. A reasonable inference is that this was with the approval of the corporation and that he was invested with such power as apparently and usually falls within the authority of such general manager. The primary question then is, Could Berman apparently authorize Silverstein to bind the corporation? This cannot be determined by what either of them said or did. An agent cannot establish his agency by his own acts or declarations. Appellee must be able to trace such apparent authority to some deed of the corporation either express or implied. Amer. Natl. Bank, etc., v. Bartlett, 40 F.(2d) 21, 23 (C. C. A. 10); Marx v. King, 162 Mich. 258, 267, 127 N. W. 341; Sou. Ry. Co. v. Pickle, 138 Tenn. 238, 245, 197 S. W. 675. An agent's apparent authority, or, as it is sometimes phrased, "the apparent scope of an agent's authority," springs altogether out of his actual authority either express or implied, and the test whether Berman had such apparent authority is, would a reasonably prudent person acquainted with the usages of the business be justified upon a consideration of Berman's office and his implied powers as general manager in supposing that he was authorized to delegate the execution of the contract to Silverstein? Natl. Safe Dep. Co. v. Hibbs, 229 U. S. 391, 396, 33 S. Ct. 818, 57 L. Ed. 1241; Richmond Guano Co. v. E. I. Du Pont de Nemours Co., 284 F. 803, 807 (C. C. A. 4). We think that by this test appellee's case falls. It must be accepted that the corporation permitted Berman to act as general manager because they had confidence in his personal fitness for that duty. It is a reasonable inference that he was authorized himself to engage a manager, but it is unreasonable to believe that a corporation through its directors ever intended that he should create subagents for that purpose. Such business policy would be ruinous. We think that his agency had the elements of a personal trust which he had no right to abandon. Warner et al. v. Martin, 11 How. 209, 224, 13 L. Ed. 667. There was no urgent necessity for abandoning it. See

Natl. Bank of the Republic v. Old Town Bank of Baltimore, 112 F. 726, 728 (C. C. A. 7). There is no evidence that a similar thing had ever been done before in the conduct of such business. That a general manager should undertake to vest in a third party power to execute a contract of such importance was so unusual as to at once challenge the attention of an ordinarily cautious man and especially one schooled in the hotel business, as was appellee. See Western Natl. Bank v. Armstrong, 152 U. S. 346, 351, 14 S. Ct. 572, 38 L. Ed. 470; Continental Ins. Co. v. Schulman, 140 Tenn. 481, 492, 205 S. W. 315. As to power of an agent to appoint subagents, see Emerson v. Providence Hat Mfg. Co., 12 Mass. 237, 241, 7 Am. Dec. 66.

Appellee insists that, even though Berman was originally without authority, yet there was substantial evidence of ratification. To this we cannot agree. Ratification of an unauthorized act can be only with full knowledge of all material facts. Berman testified that he never knew of the signed contract until appellee advised him of it at the time of his discharge. Upon this point Berman is not contradicted. Silverstein, though living in Detroit, was not called as a witness. Appellee makes no pretense that he ever informed Berman of the signed contract until he was discharged. He made no attempt to take advantage of the contract provisions for his family. The fact that he was paid by Berman from time to time until his discharge is wholly consistent with Berman's contention touching his employment.

Without further detailed discussion, we conclude that appellant was entitled to a directed verdict.

Error is alleged upon the court's action (1) in admitting certain testimony; and (2) in declining to admit certain other testimony. Exceptions were not properly preserved, and we therefore consider these assignments no further. In the light of this opinion the same questions will probably not arise upon another trial.

As the case must be reversed for a new trial, we think it proper to consider the contention that it was error to allow the introduction of the contract sued on because it was never declared upon nor attached to the declaration as provided by Michigan Circuit Rule No. 21, § 6.[2] The court permitted the

introduction of the contract over this rule, probably in the belief that its introduction did "not affect the substantial rights of the parties." Compiled Laws of Mich. 1915, § 12478 (section 1). But we think that upon a retrial a substantial compliance with the rule by amendment will simplify the issues.

On the assumption that there was basis for liability, appellant insists that the jury erred in returning a verdict for less than appellee was entitled to. It is enough to say that we do not regard the case as an exception to the general rule that the appellee alone can complain of such verdict. Postal Telegraph Cable Co. v. New Hope, 192 U. S. 56, 24 S. Ct. 204, 48 L. Ed. 338.

Reversed.

---

[2] Michigan Circuit Rule No. 21, § 6: "Whenever a cause of action or defense is based upon a written instrument or document, the substance only of such instrument or document shall be set forth in the pleading, and a copy thereof shall be attached to the pleading as an exhibit, which shall be deemed to be a part of the pleading, or said copy may with like effect be set forth in the pleading, provided that such copy need not be attached or set forth when the written instrument or document is one the form of which is prescribed by statute. Profert shall not be required."